FILED
United States Court of Appeals
Tenth Circuit

February 24, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARGEE JOHNSON,

      Plaintiff - Appellant,

v.

WELD COUNTY, COLORADO, a
governmental entity,

      Defendant - Appellee.

No. 08-1365

**ORDER**

Before **GORSUCH, McKAY** and **HOLMES**, Circuit Judges.

This matter is before the court to direct *sua sponte* panel rehearing and to amend
the opinion filed originally in this appeal on February 8, 2010. Specifically, we grant
panel rehearing for the limited and sole purpose of deleting the citation to *Odom v. Frank*,
3 F.3d 839 (5th Cir. 1993), contained on page 14 of the original decision. A copy of the
amended decision is attached to this order. The Clerk is directed to reissue the decision,
nunc pro tunc, forthwith.

                Entered for the Court,

                ELISABETH A. SHUMAKER
                Clerk of Court

FILED
United States Court of Appeals
Tenth Circuit

February 8, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MARGEE JOHNSON,

      Plaintiff-Appellant,

v.

WELD COUNTY, COLORADO, a
governmental entity,

      Defendant-Appellee.

No. 08-1365

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 06-cv-2362-JLK)

John R. Olsen of Olsen & Brown, LLC, Niwot, Colorado, for Plaintiff-Appellant.

Katherine M.L. Pratt (Thomas J. Lyons with her on the brief), of Hall & Evans, Denver, Colorado, for Defendant-Appellee.

Before **GORSUCH, McKAY,** and **HOLMES,** Circuit Judges.

**GORSUCH,** Circuit Judge.

After Weld County chose to hire someone else as its Fiscal Officer, Margee Johnson, an accountant for the County, came to believe that she didn't get the job because she is a woman and has a physical disability. In response, she brought this lawsuit,

alleging discrimination in violation of, among other things, Title VII of the Civil Rights Act of 1964 and the Americans with Disability Act ("ADA"). In the end, however, the district court granted the County's request for summary judgment on all counts against it. We now affirm that decision because Ms. Johnson failed to rebut the County's evidence suggesting that the male candidate it hired as Fiscal Officer had superior qualifications to hers, as well as its evidence that she was not, at the time of the hiring decision, disabled within the meaning of the ADA.

I

Viewing the facts in the light most favorable to Ms. Johnson, as we must, *see* Fed. R. Civ. P. 56(c), they tell us this. In 1998, Ms. Johnson began working for Weld County as an accountant, though, several years earlier, she had been diagnosed with multiple sclerosis. By all reports, Ms. Johnson was a good employee who worked for the County without complaint for many years.

The troubles giving rise to this case began only in 2005 when Marilyn Carlino, the County's Fiscal Officer and Ms. Johnson's direct supervisor, resigned. Until a new Fiscal Officer could be hired, Walter Speckman, Director of the County Department of Human Services, placed Ms. Johnson in the position on an interim basis, for which she received a temporary 5% pay raise. At the same time, Ms. Johnson and others applied for the job on a permanent basis. Ultimately, the County narrowed the pool of candidates to five individuals: Ms. Johnson, three other female candidates, and one male candidate, Dennis Bogott. After a committee consisting of Mr. Speckman and six women interviewed,

- 2 -

scored, and ranked the candidates, it recommended the two highest-ranked individuals to Mr. Speckman, who, as Director, made the final decision. The top two candidates were Mr. Bogott and a female candidate; Ms. Johnson was ranked fourth of the five candidates. After a background check of the top two candidates, Mr. Bogott, who had thirty-five years' experience in the accounting field, was hired and began work as the County Fiscal Officer in April 2005.

When Mr. Bogott started work, Ms. Johnson was tasked with training him, though she says she really did his job for him. Ms. Johnson continued to receive her 5% pay increase during this training period, which lasted into May 2005, though she insists she continued to perform Mr. Bogott's duties well after that.

Eventually, in September 2005, Ms. Johnson complained to the Human Resources Department, Mr. Speckman, and Mr. Bogott that she was a victim of discrimination. The Human Resources Department responded by offering to extend her temporary pay increase retroactively through August 31.[1] Within a few days of Ms. Johnson's complaints, Mr. Speckman and Mr. Bogott began to ignore her and eventually came to tease and snub her.

On November 28, 2005, Ms. Johnson filed a charge with the Equal Employment Opportunity Commission ("EEOC") and eventually received a letter giving notice of her right to sue. Ms. Johnson resigned from Weld County on May 12, 2006, and then filed this lawsuit alleging discrimination on the basis of sex and disability. In due course, the

---

[1] Ms. Johnson testified that her temporary pay increase actually lasted through September 2005, apparently due to a paperwork error that the County nonetheless honored.

County moved for summary judgment, which the district court granted on all of Ms. Johnson's claims.

Ms. Johnson responded by bringing this appeal. In what follows, we analyze her various claims in sequence. Parts II-IV focus on her Title VII sex discrimination claims — including for failure to hire (Part II), pay discrimination (Part III), and retaliation (Part IV). Part V, meanwhile, focuses on her disability claims under the ADA. Because this case comes to us on summary judgment, we assess all of Ms. Johnson's claims *de novo*: that is, we will affirm the district court's disposition only if our independent review of the record, viewing the facts in the light most favorable to Ms. Johnson, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. At the same time, we review challenges to the district court's determinations regarding what is and is not competent evidence for our consideration at the summary judgment stage for abuse of discretion. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

II

Ms. Johnson argues first and foremost that the County discriminated against her on the basis of her sex, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, by hiring Mr. Bogott instead of her as the County's permanent Fiscal Officer. She suggests she has a triable Title VII claim in light of both direct, *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), and circumstantial evidence, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir.

- 4 -

2007).  Either mode of proof, of course, can suffice to defeat summary judgment, and so we examine each in turn.

A

Ms. Johnson's direct evidence of sex discrimination consists of her testimony that Mr. Bogott and Barb Burns, a County accounting technician, told her that Mr. Speckman admitted to them (Mr. Bogott and Ms. Burns) that he (Mr. Speckman) didn't hire her (Ms. Johnson) because of her sex and multiple sclerosis.  Ms. Johnson also relies on the fact that Mike Willoughby, a Department of Labor auditor not employed by the County, told her that Mr. Bogott had told him (Mr. Willoughby) that Mr. Speckman had told him (Mr. Bogott) that he didn't hire her (Ms. Johnson) because she was a woman.

The district court held that this evidence failed to create a triable question of fact because it is inadmissible hearsay.  Ms. Johnson disputes this analysis, offering three essential reasons why, in her view, we should find the district court's evidentiary ruling to constitute an abuse of discretion.  None is persuasive.

1

Ms. Johnson first suggests that Mr. Speckman's statements are not hearsay but rather admissions by a party-opponent, emphasizing that he was the individual County officer responsible for the hiring decision.  *See* Fed. R. Evid. 801(d)(2)(D).  The difficulty with this argument is that, even accepting Mr. Speckman's statements as party-opponent admissions, a hearsay problem remains.

- 5 -

The remaining problem, as the district court correctly noted, is that Mr. Speckman's alleged admissions come bundled inside Mr. Bogott's, Ms. Burns's, and Mr. Willoughby's out-of-court remarks to Ms. Johnson, which are themselves hearsay. *See* Fed. R. Evid. 801(c). Because the district court couldn't consider the hearsay statements of Mr. Bogott, Ms. Burns, or Mr. Willoughby, by necessity it couldn't consider anything contained within them, including Mr. Speckman's alleged party-opponent admissions.

To this, Ms. Johnson replies that Mr. Bogott's statement is admissible because he, like Mr. Speckman, qualifies as a party-opponent. And it is surely the case that, were both Mr. Bogott and Mr. Speckman party-opponents, the hearsay problem would evaporate because both links in the chain of communication would involve non-hearsay party-opponent admissions. *See* 5 Jack Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 805.03, at 805-5 & n.3 (Joseph M. McLaughlin ed., 2009); *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1081 (6th Cir. 1999) (holding witness's testimony of party agent's statement to second party agent, who relayed statement to witness, admissible under Federal Rules of Evidence 801(d)(2)(D) and 805).

The difficulty for Ms. Johnson is that Mr. Bogott cannot be fairly considered a party-opponent. Under our controlling precedent, an employee's statements are not attributable to his employer as a party-opponent admission in an employment dispute unless the employee was "involved in the decisionmaking process affecting the employment action" at issue. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (per curiam) (quoting *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d

- 6 -

756, 762 (7th Cir. 2003)).  The undisputed facts confirm that Mr. Bogott wasn't remotely involved in the Fiscal Officer hiring decision:  instead, he was merely another candidate for the position, not yet even a County employee.  Accordingly, the district court rightly concluded that his statements are "outside the scope of his employment and not admissible as statements of a party opponent." *Id.*

2

Ms. Johnson separately contends that Mr. Bogott's, Ms. Burns's, and Mr. Willoughby's statements aren't hearsay because they are not "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  That is, Ms. Johnson contends that their statements aren't offered "to prove the truth of what Speckman said — only that he said it." Opening Br. at 46 (emphasis omitted).

This won't solve the hearsay problem either.  Even assuming without deciding that the mere fact Mr. Speckman made his comments is relevant to Ms. Johnson's case, the only way Ms. Johnson can prove the fact of Mr. Speckman's comments is through Mr. Bogott's, Ms. Burns's, and Mr. Willoughby's out-of-court hearsay statements to her.  It is the same as though Ms. Johnson had testified that Mr. Bogott, Ms. Burns, and Mr. Willoughby each told her that Mr. Speckman had driven through town at noon.  Even if Mr. Speckman's actions (driving through town or speaking as a party-opponent) don't themselves raise a hearsay problem, the out-of-court statements describing them still do. *See* 2 Kenneth S. Broun et al., McCormick on Evidence § 246, at 129 (6th ed. 2006) ("For example, witness W reports on the stand that declarant D has stated that X was driving at a

given time and place.  The proponent is trying with this evidence to prove that X did so act.  The out-of-court assertion is being offered to prove the truth of the matter asserted, and by definition, it is hearsay.").

3

Finally, Ms. Johnson urges us to consider Mr. Bogott's, Ms. Burns's, and Mr. Willoughby's statements because they could be replaced at trial by admissible evidence, namely their live testimony.  This we cannot do.  When a proper hearsay objection has been made and preserved, "[i]t is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment."  *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995)); *see also Montes*, 497 F.3d at 1176 ("Under our precedents, we are constrained to disregard such hearsay on summary judgment when, as here, there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule.").

Seeking to avoid this result, Ms. Johnson relies on language in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), in which the Supreme Court indicated that "[w]e do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."  *Id.* at 324.  This, Ms. Johnson argues, permits consideration of hearsay evidence at summary judgment if its proponent could later replace it with the declarant's testimony at trial.

We long ago rejected just this argument as a misreading of *Celotex*. In *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995), we explained that, while *Celotex* indicates that the *form* of evidence produced by a nonmoving party at summary judgment may not need to be admissible at trial, "the *content or substance* of the evidence must be admissible." *Id.* at 485 (emphasis added). That is, Rule 56 permits parties at summary judgment to produce their evidence by means of affidavit, a *form* of evidence that is usually inadmissible at trial given our adversarial system's preference for live testimony. Yet, at the same time, Rule 56 does not suggest we enjoy a license to relax the *content* or *substance* of the Federal Rules of Evidence when viewing a summary judgment affidavit: the Rule does nothing to intimate "hearsay testimony that would be inadmissible at trial" somehow becomes admissible simply by being "included in an affidavit to defeat summary judgment." *Id.* To the contrary, Rule 56 expressly prescribes that a summary judgment affidavit must "be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727, at 497-98 (3d ed. 1998) ("Material that is inadmissible will not be considered on a summary-judgment motion because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless.").

So it is that, although evidence presented in the form of an affidavit at summary judgment can be "converted" in form into live testimony at trial, the content or substance

of the affidavit must be otherwise admissible, and any hearsay contained in a summary judgment affidavit remains hearsay, beyond the bounds of the court's consideration. To read *Celotex* otherwise would be to "misconstrue the message" of the Supreme Court "that summary judgment is a legitimate and efficient way of disposing of unsupported claims" because "[t]he changes in summary judgment procedure heralded by . . . *Celotex* [would] have little impact if the proceedings [could] get bogged down in a needless examination of the hypothetical ways the nonmoving party's evidence might be reduced to admissible form by the time of trial." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991) (quoting Melissa L. Nelken, *One Step Forward, Two Steps Back: Summary Judgment After* Celotex, 40 Hastings L.J. 53, 85 (1988)) (first alteration in original); *see also Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).

Had Ms. Johnson followed the expedient contemplated by Rule 56 and secured sworn statements from those who allegedly heard Mr. Speckman's remarks, this case "might be in a very different posture." *Young v. Dillon Cos.*, 468 F.3d 1243, 1252 (10th Cir. 2006). But though on notice of the necessity of doing so under our precedent, she did not follow that course and so we are left, as was the district court, with the unavoidable conclusion that she lacks competent direct evidence of discrimination.

B

Even so, Ms. Johnson submits she should be permitted to proceed to trial in light of the admissible circumstantial evidence of discrimination she has amassed. Under the familiar *McDonnell Douglas* burden-shifting framework, we analyze Title VII claims

- 10 -

based on circumstantial evidence in three steps.  First, a plaintiff opposing summary judgment must make a prima facie case of discrimination.  *Young*, 468 F.3d at 1249.  Second, the defendant then must articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  Third, the burden then shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination.  *Id.*

The first two steps of this analysis are not seriously in question before us.  The district court determined that Ms. Johnson established a prima facie case of discrimination, and we assume without deciding she has.  The County, in turn, offered legitimate non-discriminatory reasons for its failure to hire Ms. Johnson, submitting that (1) Mr. Bogott was better qualified for the position by dint of his considerably greater accounting experience and superior credentials, and (2) Ms. Johnson lacked the requisite academic qualifications for the job.

The real dispute in this case, like many others, centers on *McDonnell Douglas*'s third step.  Under our precedents, a plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief."  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008) (quoting *Young,* 468 F.3d at 1250).  Ms. Johnson challenges the County's explanations for hiring Mr. Bogott on several grounds, the most significant of which we discuss here in turn.

- 11 -

1

Ms. Johnson first attacks the County's explanation that Mr. Bogott had superior qualifications, arguing that he proved himself unqualified when he was unable to perform his duties and needed Ms. Johnson to do them for him. Our authority to hold for Ms. Johnson on this basis is limited, however. Under *McDonnell Douglas*, our role isn't to ask whether the employer's decision was "wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs." *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999)) (first alteration in original).

That individuals and companies sometimes make employment decisions that prove to be bad ones in hindsight usually suggests no more than that — that they got it wrong. To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong. He or she must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda. This is because Title VII licenses us not to act as a "super personnel department" to undo bad employment decisions; instead, it charges us to serve as a vital means for redressing discriminatory ones. *Hinds*, 523 F.3d at 1198.

Toward this end, to suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly

(even if mistakenly) held belief, a plaintiff must come forward with facts showing an "overwhelming" "disparity in qualifications." *Jaramillo*, 427 F.3d at 1309 (internal quotation marks omitted). Further, we will examine the competing candidates' qualifications only in light of the facts available to the decisionmaker at the time of the decision, not in light of facts that might have been apparent to others or that might have become apparent only in hindsight. *See Rivera*, 365 F.3d at 924-25.

We agree with the district court that any difference between Ms. Johnson's and Mr. Bogott's qualifications does not come close to suggesting pretext under these standards. Mr. Bogott had a bachelor's degree in business with a double major in finance and accounting, a supervisor's certificate, and thirty-five years' experience in finance and accounting. Meanwhile, Ms. Johnson had a bachelor's degree in business administration specializing in computers and accounting, with a minor in accounting; an associate's degree in accounting; and at least ten years' experience in accounting, including her stint as interim Fiscal Officer. Even if Mr. Bogott later proved incapable of performing his duties, as Ms. Johnson asserts, his qualifications — as they appeared to the County when he was hired — were arguably superior, and certainly not overwhelmingly inferior, to Ms. Johnson's.

2

Ms. Johnson separately challenges the County's claim that she lacked the requisite academic qualifications for the job. The job description the County employed sought someone with a "Bachelor's Degree in Business Administration with an emphasis in

- 13 -

Accounting." Aplt. App. at 257. The County contends that, in seeking an individual with an "emphasis in Accounting," it was after someone who, like Mr. Bogott, majored in accounting, and that Ms. Johnson's degree, with only a minor in accounting, was insufficient. To this, Ms. Johnson responds that her degree in business administration specializing in computers and accounting, with a minor in accounting, constitutes an "emphasis in Accounting," and so the County's proffered explanation must be pretextual.

At least two problems attend Ms. Johnson's argument. In the first place, we are in no position to define what constitutes an "emphasis in Accounting" as an academic matter; trying to do so would run the risk of having us assume the role of a university's super registrar's office on top of an employer's super personnel department. For our purposes, the relevant question is, once again, not what a university might think constitutes an "emphasis in Accounting," but whether the County honestly believed its claim that Ms. Johnson lacked what it considered to be an "emphasis in Accounting." And on that score, Ms. Johnson has come forward with no evidence suggesting it did not.

Secondly, and independently, "[a]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual." *Jaramillo*, 427 F.3d at 1309-10 (quoting *Tyler v. RE/MAX Mt. States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000)). Whatever the persuasiveness of its claims about its academic requirements, the County separately cited Mr. Bogott's arguably superior qualifications (including some twenty-five years' additional experience and a supervisor's certificate) as a separate and additional reason for its hiring decision. Ms. Johnson's evidence and

- 14 -

argument about her academic credentials does nothing to undercut this independent justification.

3

Ms. Johnson suggests that pretext can be inferred from the fact that, according to her, Mr. Speckman sometimes "exploded" at female, but not male, employees. From this, she argues, a jury could infer that Mr. Speckman harbored a bias against women that infected his hiring decision.

To establish pretext from such comments, however, our precedent requires that they be "somehow . . . tied to the employment actions disputed in the case at hand." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1184 (10th Cir. 2006) (quoting *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 489 (10th Cir. 2006)). That is, Ms. Johnson must show that "the allegedly discriminatory comments were directed at [her], her position, or the defendant's policy which resulted in the adverse action taken against" her. *Young*, 468 F.3d at 1253 (quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994)) (alteration in original).

This Ms. Johnson has not done. She points us to one alleged outburst in which Mr. Speckman "exploded" when Ms. Johnson expressed concerns about County accounting practices, telling her that she didn't know what she was talking about and wasn't to tell him how to do his job. Aplt. App. at 168. But Ms. Johnson offers no evidence suggesting that this incident related at all to her sex or to the Fiscal Officer position. The alleged incident came, moreover, shortly before Ms. Johnson ended her employment with the

County, nearly a year after Mr. Bogott was hired. Without any meaningful connection, in either time or topic, to the decision not to hire Ms. Johnson as Fiscal Officer, Mr. Speckman's alleged comment cannot give rise to an inference that the County's explanation for that decision is pretextual.[2]

4

Ms. Johnson contends that pretext can be inferred from an alleged procedural irregularity in the hiring process. In Ms. Johnson's view, Barbara Connolly was "tacked on" as a seventh member of the interview committee when there were supposed to be only six members, and Ms. Connolly was allowed to veto Ms. Johnson's candidacy by casting a "not recommended" vote against her.

Perhaps the most significant difficulty with this line of argument is the absence of record evidence suggesting that having seven members on the interview committee was contrary to any County hiring policy. But even overlooking this difficulty, it remains the law that not every failure to follow every directive in an employer's policy manual gives rise to an inference of pretext for invidious discrimination. *Hinds*, 523 F.3d at 1199. Employers often fail to follow written policy manuals for benign (sometimes even very sound) business reasons, and in any event our job isn't to enforce employment manuals but to protect against unlawful discrimination. *Id.* For an inference of pretext to arise on

---

[2] Ms. Johnson also argues that Mr. Speckman's comments to Mr. Bogott and Ms. Burns constitute an explanation for the failure to hire Ms. Johnson that's inconsistent with the County's proffered reasons. But, as we have already explained, *see supra* Part II.A, Ms. Johnson's evidence of those statements rests on inadmissible hearsay.

the basis of a procedural irregularity, we have held that there must be some evidence that the irregularity "directly and uniquely disadvantaged a minority employee." *Randle v. City of Aurora*, 69 F.3d 441, 454 n.20 (10th Cir. 1995). In the case before us, it is undisputed that every candidate, not just Ms. Johnson and not just the female applicants, was interviewed by the seven-member committee.

Ms. Johnson's other challenges to Ms. Connolly's participation fare no better. There is no evidence that Ms. Connolly's "not recommended" vote functioned as the automatic veto Ms. Johnson contends. Rather, as the district court observed, the County's published hiring procedure doesn't specify what effect a single "not recommended" vote was to have, let alone command the preclusive effect Ms. Johnson suggests. And affidavits from County employees — the only evidence Ms. Johnson mentions on this point — indicate that a "not recommended" vote by one interview committee member could be overcome by high scores from other committee members. Perhaps even more pointedly still, as a practical matter Ms. Connolly's vote made no difference: even without Ms. Connolly's "not recommended" vote — indeed, even disregarding Ms. Connolly's scoring of candidates altogether — Ms. Johnson still ranked fourth out of the five candidates, not in the top two destined to advance for final consideration.[3]

---

[3] Ms. Johnson's remaining pretext arguments do not merit extended discussion. For example, she suggests that pretext can be inferred from the fact that Mr. Bogott was hired over a female candidate whom the committee ranked higher. But the County has explained that the higher-ranked female candidate wasn't selected in the end because of information learned during her background check, and Ms. Johnson has offered no evidence or argument to suggest that this explanation is somehow unworthy of credence.

(continued...)

III

Ms. Johnson claims that the County separately violated Title VII by paying her less

than Mr. Bogott during the period she was training him because, in her view, she was

effectively doing his job. Ms. Johnson argues that the district court erred in awarding the

County summary judgment on her pay discrimination claim *sua sponte* when the County's

opening brief in support of summary judgment didn't focus on that particular theory.

Though we generally don't favor the granting of summary judgment *sua sponte*, a

district court may do so if "the losing party was on notice that [she] had to come forward

with all of [her] evidence." *Scull v. New Mexico*, 236 F.3d 588, 600 (10th Cir. 2000)

(quoting *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 892

(10th Cir. 1997)). And even if such notice is lacking, we will still affirm a grant of

summary judgment if the losing party suffered no prejudice from the lack of notice. *Id.* at

600-01.

That is the case here. Though the County didn't squarely focus on Ms. Johnson's

pay discrimination allegations in its opening summary judgment brief, in her opposition

---

[3](...continued)
Likewise, Ms. Johnson complains that Ms. Connolly's vote was based on a subjective assessment that Ms. Johnson "lacked tact" and is thus suspicious. Whatever other problems exist with this line of argument, because there is no evidence that Ms. Connolly's vote had any effect on which Fiscal Officer candidates were recommended to Mr. Speckman, it follows that whatever Ms. Connolly's reasons for her vote may have been they could have had no impact on the County's ultimate hiring decision.

Finally, Ms. Johnson asserts, without example or explanation, that the questions asked by the committee were "subjective." Having reviewed the questions, we find this allegation without merit.

papers Ms. Johnson nonetheless marshaled and outlined the evidence supporting her claim, as her counsel acknowledged to us at oral argument. There's no indication that the district court's subsequent grant of summary judgment on the claim prevented Ms. Johnson from offering additional evidence or argument to defend her claim. *See id.* at 601. Indeed, before us she relies on exactly the same evidence and arguments she made before the district court, and identifies no way in which she was prejudiced by the district court's chosen procedural course.

Having established that summary judgment on Ms. Johnson's pay discrimination claim was fairly in play before the district court, we turn to the question whether granting it was proper. Though the court remarked that Ms. Johnson's "allegations are insufficient to support a formal claim for sex-based pay discrimination," it proceeded to grant summary judgment for the County on a different rationale, explaining its view that Ms. Johnson had "abandoned" the claim in the course of her summary judgment briefing. D. Ct. Op. at 1 n.1. We disagree that Ms. Johnson abandoned her pay discrimination claim: rather, as we've noted, she vigorously defended it in her summary judgment briefing. But we may, of course, affirm the district court's grant of summary judgment on any ground adequately supported by the record. *See Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). And before us the County suggests the district court's initial instinct was correct, arguing that Ms. Johnson has indeed failed to present facts sufficient to support a prima facie case of pay discrimination. With this submission, we agree.

To establish a prima facie case of pay discrimination, Ms. Johnson had to adduce evidence tending to show "that she occupie[d] a job similar to that of [a] higher paid male[]" — in this case, Mr. Bogott. *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)). Ms. Johnson has made no such showing in this case. There is no question that Mr. Bogott had considerably greater accounting, finance, and supervisory experience than Ms. Johnson. There is no dispute that their respective positions differed significantly in their stated responsibilities. And while Ms. Johnson argues that she might have performed "at least 60 to 75 percent" of Mr. Bogott's duties during his training period, Aplee. Supp. App. at 3, this left a wide swath of responsibilities solely and indisputably in his hands. The lack of similarity in Ms. Johnson's and Mr. Bogott's jobs is underscored by our precedent in *Sprague*. There, we held that the plaintiff failed to establish that she occupied a comparable job to higher-paid males when the "higher paid managers had much greater . . . experience [and] a greater array of responsibilities, and [the plaintiff] did not perform all of the functions . . . that these managers performed." *Sprague*, 129 F.3d at 1363. Each of these considerations is equally present in our case, and we discern no way we could conscientiously come to a different result here than we did in *Sprague*.[4]

---

[4] Ms. Johnson separately argues that she was paid less than male accountants working for the County while doing the same work. But the County has presented evidence that, through the entire course of Ms. Johnson's employment, it employed no male full-time accountants, and Ms. Johnson points to no evidence to dispute this fact. Accordingly, summary judgment was proper on this pay discrimination theory, as well.

IV

Whether or not the County discriminated against her on the basis of sex, Ms.

Johnson argues it violated Title VII by retaliating against her for alleging that it did. To

establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that "(1)

she engaged in protected opposition to discrimination; (2) she suffered an adverse action

that a reasonable employee would have found material; and (3) there is a causal nexus

between her opposition and the employer's adverse action." *Williams v. W.D. Sports,

N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007) (quoting *Antonio*, 458 F.3d at 1181).

Before us, the County does not dispute that Ms. Johnson engaged in protected activities by

complaining of discrimination both internally and to the EEOC, starting in September

2005. Instead, the County and the district court have suggested that Ms. Johnson's claim

fails at the second step because any actions County employees took against Ms. Johnson

cannot be fairly described as "materially adverse."

In approaching the question whether any actions the County took against Ms.

Johnson were "materially adverse," we are obliged to bear in mind that "Title VII protects

individuals 'not from all retaliation' but only from retaliation 'that produces an injury or

harm'" that itself rises to a "'level of seriousness.'" *Id.* at 1087 (quoting *Burlington N. &

Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). To qualify under this standard, we

held in *Williams* that a plaintiff must show "a reasonable employee would have found the

challenged action materially adverse, which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*

(quoting *White*, 548 U.S. at 68) (internal quotation marks omitted). "Requiring this level of adversity . . . is necessary 'to separate significant from trivial harms,'" *id.* (quoting *White*, 548 U.S. at 68), "petty slights, minor annoyances, and simple lack of good manners," *White*, 548 U.S. at 68. "Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)).

In seeking to satisfy this standard, Ms. Johnson argues before us that, shortly after she first complained of discrimination, Mr. Speckman and Mr. Bogott gave her the "cold shoulder," sat farther away from her at meetings, became too busy to answer her questions, and generally tried to avoid her. Aplt. App. at 200-01. We agree with the district court, however, that these alleged snubs, though surely unpleasant and disturbing, are insufficient to support a claim of retaliation under our case law. *See, e.g.*, *White*, 548 U.S. at 68 (citing 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 669 (3d ed. 1996) (noting that "'snubbing' by supervisors" is not actionable retaliation)); *MacKenzie*, 414 F.3d at 1279 (holding that "silent treatment" is "mere passive treatment [that] does not constitute an adverse employment action"); *see also Recio v. Creighton Univ.*, 521 F.3d 934, 940-41 (8th Cir. 2008) (holding "silent treatment"

not materially adverse); *Mlynczak v. Bodman*, 442 F.3d 1050, 1061 (7th Cir. 2006) (holding "shunn[ing]" by co-workers not actionable retaliation).[5]

Alternatively, Ms. Johnson argues that Mr. Bogott retaliated against her by urging her not to consult an attorney. The only evidence Ms. Johnson cites in support of this claim, however, is her contemporary diary entry indicating that Mr. Bogott told her that "there was no reason for an attorney" because he believed Ms. Johnson's grievance concerning her discontinued temporary pay increase had been resolved. Aplt. App. at 243. And merely suggesting on one occasion to an employee that she "not get the lawyers involved" simply does not rise to the level of material adversity necessary to sustain a retaliation claim, as we previously recognized in *Garrison v. Gambro, Inc.*, 428 F.3d 933, 939 (10th Cir. 2005).[6]

---

[5] Relatedly but distinctly, Ms. Johnson contends that she was criticized after registering her discrimination claim. But the only example of criticism she points to is a performance review from November 2005 that reports her overall rating as "Meets Job Requirements +," the highest rating she ever received while working for the County. Aplt. App. at 91, 118-19. Ms. Johnson also alleges that Mr. Speckman's and Mr. Bogott's "silent treatment" and other actions were purposely aimed at aggravating her multiple sclerosis by increasing her stress levels. But while Mr. Speckman and Mr. Bogott knew Ms. Johnson suffered from the disease, the district court correctly noted that there is no evidence in the record to suggest they acted with any intent to exacerbate her medical condition. Neither does the record contain evidence to support Ms. Johnson's accusation that the County retaliated by failing to investigate her complaints of discrimination.

[6] Relying on essentially the same facts as those used to support her retaliation claim, Ms. Johnson alleges that the County violated Title VII by constructively discharging her, either because of her sex or in retaliation for her complaints of discrimination. But the standard for constructive discharge is "substantial," *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008), requiring an employee at summary

(continued...)

- 23 -

V

Paralleling her Title VII sex-based claims, Ms. Johnson asserts the County violated the ADA, 42 U.S.C. § 12101 *et seq.*, by discriminating against her on the basis of her multiple sclerosis when it chose Mr. Bogott instead of her to serve as the County Fiscal Officer.[7]

Where, as here, an ADA plaintiff seeks to proceed to trial exclusively on the basis of circumstantial evidence of discrimination, we have held that "the analytical framework first articulated in" *McDonnell Douglas* in the context of Title VII claims controls our

---

[6](...continued)
judgment to produce facts suggesting that the workplace was objectively intolerable such that a reasonable employee would have no choice but to quit, *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858 (10th Cir. 2000). Because Ms. Johnson's facts fail to meet the threshold required for a retaliation claim — a material adverse harm — it follows that those same facts cannot satisfy the higher threshold required for a constructive discharge claim. To be sure, in support of her constructive discharge claim (but not her retaliation claim), Ms. Johnson adds a new fact, asserting that she was asked to "perform unethical acts of accounting." Opening Br. at 31. But our precedent teaches that this is insufficient to have deprived Ms. Johnson of "the opportunity to make a free choice regarding [her] employment relationship," because "[i]nstead of resigning, [she] could have chosen to comply with [her] superior's order or, alternatively, refused to comply and faced the possible consequences of that choice." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135-36 (10th Cir. 2004); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002); *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997). As it happens, Ms. Johnson exercised just such a choice in this case, electing to follow the orders she now complains of.

[7] The ADA was amended, effective January 1, 2009, by the ADA Amendments Act of 2008. "It is unnecessary to consider the effect of those changes," as all the conduct Ms. Johnson complains of occurred in 2006 or earlier. *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261 n.2 (10th Cir. 2009).

- 24 -

analysis. *MacKenzie*, 414 F.3d at 1274.[8] Accordingly, the plaintiff must first establish a prima facie case of discrimination, showing a genuine issue of material fact exists on each of three points: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability." *Id.* If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. Should the defendant articulate a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual." *Id.* (citation omitted).

The district court held that Ms. Johnson failed to establish a prima facie case of discrimination because she failed to adduce evidence suggesting that she is a disabled person within the meaning of the ADA. The ADA defines a "disability" as either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Before us, Ms. Johnson challenges the district court's holding, arguing that she had a substantially limiting impairment

---

[8] The only direct evidence Ms. Johnson has put forward in support of her ADA claim is Mr. Speckman's alleged statement that he didn't hire her because of her sex and multiple sclerosis, which we have already determined is inadmissible hearsay. *See supra* Part II.A.

(subsection (A)) and that Mr. Speckman regarded her as having such an impairment (subsection (C)).[9]  We address these contentions in turn.

A

To establish an ADA disability under subsection (A), our precedent indicates that a plaintiff must "articulate with precision" both her impairment and the major life activity it substantially limited.  *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003) (quoting *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1232 (10th Cir. 1999)).  An impairment is substantially limiting when it renders an individual either unable or significantly restricted in her ability to perform a major life activity "compared to the average person in the general population."  *Id.* at 1130.

Ms. Johnson claims her multiple sclerosis limited her ability to work.  Whether work qualifies as a major life activity for purposes of the ADA is a question this court has not resolved, though we have previously assumed without deciding it does.  *See Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1204 (10th Cir. 2003).  Proceeding on that same assumption here, to avoid summary judgment Ms. Johnson must still point us to some evidence that her disease substantially limited her ability to work.  *Id.* at 1204.  The record, however, contains no such evidence.  To the contrary, in support of her Title VII claims Ms. Johnson has sought to show, and has produced significant evidence suggesting, that

_____

[9] In her opposition to summary judgment in the district court, Ms. Johnson also advanced a "record of impairment" theory, but on appeal she doesn't challenge the district court's rejection of that argument.

she was a highly competent employee at the time of the challenged hiring decision. Among other things, she has pointed us to her excellent performance reviews, including an assessment from November 2005 — about seven months after she wasn't hired as Fiscal Officer, and six months before she resigned — indicating that she "is enjoyable to work with; positive, responsible, knowledgeable, up-beat and dependable. She completes tasks as assigned and takes full responsibility for those tasks." Aplt. App. at 223.

In concluding that Ms. Johnson has not presented evidence from which a rational jury could find that she was substantially limited in her ability to perform work, we do not mean to suggest that Ms. Johnson's multiple sclerosis never interfered with her ability to work, or that it won't advance to a stage where it could substantially limit her ability to work. Far from it. Instead, we mean to say only that at the time in question there is no dispute that Ms. Johnson, despite her disease, performed acceptable work. And, as long as a plaintiff by her own admission "maintain[s] a satisfactory level of job performance," her working ability cannot be said to be so limited that she can be fairly described as disabled under the terms of the ADA. *Croy*, 345 F.3d at 1204 (reaching same result regarding similar plaintiff with multiple sclerosis).[10]

---

[10] Ms. Johnson also suggests that she is substantially limited in the major life activities of seeing and sleeping. Her reference to difficulty seeing, however, is limited to a single instance in 2003 of temporary blindness in one eye, caused by a substance on a Christmas tree that triggered her multiple sclerosis. She recovered fully a few weeks later, and so wasn't impaired at any time relevant to this case. Similarly, though Ms. Johnson states that she has suffered from nightmares and sleep disorders, she doesn't offer any evidence, as she must, suggesting how her difficulties sleeping compare to those of the average person in the general population (many of whom, of course, have

(continued...)

B

Arguing in the alternative, Ms. Johnson submits that, even if she was not disabled, the County mistakenly regarded her to be disabled. In this circuit, "[a] person is regarded as disabled when '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Lanman v. Johnson County*, 393 F.3d 1151, 1156 (10th Cir. 2004) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).

Before us, Ms. Johnson argues that Mr. Speckman wrongly believed that her multiple sclerosis substantially limited her ability to work. The only evidence she presents in support of this assertion, however, is Mr. Speckman's alleged statement to Mr. Bogott that he didn't hire her as Fiscal Officer because she was a woman and had multiple sclerosis, and so, in his view, she couldn't handle the stress of the position. As the district court and we have already explained, however, we may not consider this alleged statement at summary judgment because it comes to us only through inadmissible hearsay. *See supra* Part II.A. With no other, legally competent evidence from which a jury could

---

[10](...continued)
nightmares or trouble sleeping). Thus, Ms. Johnson hasn't shown that her seeing or sleeping troubles qualify her as disabled under the ADA.

- 28 -

conclude that the County regarded her as disabled, we must agree with the district court that Ms. Johnson's ADA claim fails as a matter of law.[11]

\* \* \*

The district court's grant of summary judgment is

*Affirmed.*

---

[11] In addition to her failure to hire ADA claim, Ms. Johnson pursues ADA claims for retaliation and constructive discharge. Her ADA retaliation and constructive discharge theories, however, rely on the same evidence as her Title VII retaliation and constructive discharge theories, and fail for the same reasons we have previously discussed. *See supra* Part IV. Separately, we conclude that the district court properly granted summary judgment against Ms. Johnson's claim under the Colorado Antidiscrimination Act, C.R.S. § 24-34-401 *et seq.* Colorado and federal law apply the same standards to discrimination claims, *see Colo. Civil Rights Comm'n v. Big-O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997), and so, as the district court observed, they "rise or fall" together, D. Ct. Op. at 10 — something Ms. Johnson doesn't contest.