**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 14, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GEORGE POWELL,

        Plaintiff-Appellant,

v.

LABORERS UNION #1271,

        Defendant-Appellee.

No. 10-8087
(D.C. No. 2:09-CV-00285-NDF)

---

**ORDER**

---

Before **MATHESON**, **McKAY,** and **EBEL**, Circuit Judges.

---

This matter is before the court on consideration of Appellant's petition for
rehearing en banc. The panel has denied rehearing and no panel member has
called for a poll. The petition was transmitted to all of the judges of the court in
regular active service and none has requested a poll. The petition is therefore
denied.

The panel has, however, decided to amend the order and judgment in one
technical respect that does not alter its substance. A footnote has been added to
page five of the order and judgment explaining that, after the district court's
decision, the provision in Fed. R. Civ. P. 56 governing postponements of
summary judgment for purposes of discovery was moved, without substantive

change, from subsection (f) to subsection (d).  A copy of the amended order and judgment is attached and issued herewith.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

June 7, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

GEORGE POWELL,

Plaintiff-Appellant,

v.

LABORERS UNION #1271,

Defendant-Appellee.

No. 10-8087
(D.C. No. 2:09-CV-00285-NDF)
(D. Wyo.)

ORDER AND JUDGMENT[*]

Before **MATHESON**, **McKAY,** and **EBEL**, Circuit Judges.

Plaintiff George Powell, an African-American, appeals from a district court order granting summary judgment to defendant Laborers Union #127 in this action alleging racially discriminatory employment-referral practices. Powell challenges the district court's ruling on both substantive and procedural grounds. We affirm for the reasons that follow.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  THEORY OF THE CASE

The gravamen of this case is that on several occasions the Union passed over Powell's name on a hiring hall list it maintained under a collective bargaining agreement (CBA) with companies using temporary labor, thereby depriving him of employment opportunities.  The Union explains it did so because it had received "no-rehire" letters from the employers in question directing the Union not to send Powell due to problems with his work.  Powell insists the Union's action was, rather, attributable to race discrimination.

It is important to be clear about the nature of the alleged discrimination. Unions have an affirmative duty to help ensure employers' compliance with non-discrimination directives and can thus be liable just for acquiescing in the discriminatory acts of an employer.  *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1310-11 (10th Cir. 1980).  But Powell disavows this indirect theory of liability, which of course fails if discrimination by the employer cannot be proved.  Rather, he has alleged direct discrimination on the part of the Union in its handling of the no-rehire letters, explaining that "[t]he issue was not whether the employers were discriminatory, but whether the [Union] removed the plaintiff [from his position in the hiring list] without questioning the no-rehire letters as to their legitimacy." Aplt. Brief at 16 n.4.  Consistent with that charge, he stresses what he sees as racially disparate treatment of no-rehire letters by the Union, comparing its

capitulation in his case to its vigorous opposition to a no-rehire letter sent by an employer regarding a white laborer.

In light of Powell's theory of the case, then, whether the employers' allegedly groundless no-rehire letters were racially motivated is not decisive; the thrust of his claim is that the Union failed to investigate and challenge the letters due to its own racial bias. Of course, the Union's awareness of racial issues behind an employer's no-rehire letter could still potentially bolster Powell's case against the Union for its own bias on the direct discrimination theory he has pursued, as other arguments he advances on appeal reflect.

## II. DISTRICT COURT PROCEEDINGS

Powell's complaint asserted claims under the discriminatory-referral provision of Title VII, 28 U.S.C. § 2000e-2(c)(2), and 42 U.S.C. § 1981.[1] Months after the complaint was filed, the district court entered an initial pretrial order specifying August 30, 2010, as the cut-off date for both discovery and dispositive defense motions. On that date, the parties simultaneously filed two motions: (1) Powell moved to extend the time for discovery to allow him to take depositions of six witnesses to "learn what these witnesses may or may not say under oath at trial," Aplt. App. at 78; and (2) the Union moved for summary

---

[1] The district court did not distinguish between these two provisions in its analysis of the merits of the discrimination claims asserted thereunder, and Powell does not even mention § 1981 on appeal. Hence we also will not address the latter provision in any distinct manner here.

judgment on all claims. Shortly thereafter, the district court granted Powell an extension of discovery to obtain the requested depositions, but made it clear that all other deadlines and settings specified in the initial pretrial order remained in effect. *Id.* at 89-90. Powell responded to the motion for summary judgment, without any indication that resolution of the matter should be postponed until he obtained the depositions sought for trial preparation. He argued that he had both direct evidence of discrimination, involving racial comments by the Union's business agent, James Hansen, and indirect evidence of discrimination, consisting of a prima facie case under the *McDonnell Douglas* framework[2] and facts showing that the Union's racially neutral rationale for its action was pretextual.

The district court granted the Union's motion for summary judgment. The court held that the few isolated and fairly innocuous comments Powell cited as direct evidence of discrimination did not demonstrate a genuine issue of fact on the point and that Powell had failed to create a triable issue of pretext with respect to the Union's legitimate justification for not referring him to employers that had sent no-rehire letters.

---

[2]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

# III.  ANALYSIS

## A.  Procedural Objection to Summary Judgment

Powell contends it was improper for the district court to grant the Union's

summary judgment motion before he had taken the depositions for which he had

been allowed an extension of the discovery deadline.  But he never raised this

objection in the proceedings below, where he responded to the summary judgment

motion on the merits with evidence already in his possession without seeking a

postponement of the proceedings under Fed. R. Civ. P. 56(f)[3] to gather and

present additional evidence in opposition to the motion.  Our case law makes it

clear that the failure to comply with Rule 56(f) and provide the district court an

opportunity to consider a purported need for further discovery precludes a party

from objecting to the grant of summary judgment on this basis:

> Because [the plaintiff] failed to file an affidavit under Fed.R.Civ.P. 56(f) explaining "why facts precluding summary judgment cannot be presented," which is the proper procedure by which to request further discovery prior to the court's ruling on a summary judgment motion, he has waived the argument that the grant of summary judgment should be set aside for lack of sufficient discovery. *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (citation omitted).  Rule 56(f) states that "[i]f a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts

---

[3]     The controlling provision was set out in Rule 56(f) at the time summary judgment was decided in this case.  We note that it was subsequently moved to Rule 56(d) when a new provision was added as Rule 56(f), effective December 1, 2010.  *See generally* Fed. R. Civ. P. 56, Advisory Committee Note for 2010 Amendments.

essential to justify its opposition," the court may deny the motion, order a continuance for additional discovery to be undertaken, or issue any other order that is appropriate. But "[w]here a party opposing summary judgment ... fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832-33 (10th Cir. 1986). Because [the plaintiff] did not file an affidavit, the district judge did not abuse his discretion in granting summary judgment based on the record before him.

*Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1124-25 (10th Cir. 2008). And while a party's pro se status would not excuse such an omission, *see Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir.), *cert. denied*, 131 S. Ct. 469 (2010), it is all the more appropriate to enforce our rule here, as Powell had counsel to assess the need for and value of the additional discovery in question.

## B. Substantive Challenge to Summary Judgment

On appeal, Powell contends he submitted sufficient evidence of pretext to undercut the Union's racially neutral explanation for not referring him to work with the employers who had submitted no-rehire letters.[4] Before discussing the substance of this evidence, we need to address a dispute over the formal adequacy of a particular item. Powell relies primarily on two sources for his version of the

---

[4]     Powell has re-framed the presentation of his evidence somewhat, no longer sharply distinguishing between direct evidence of Union racial animus and indirect evidence under the *McDonnell Douglas* framework. He now argues all of his evidence as supporting pretext within the latter framework. As this change in approach does not alter significantly our dispositive analysis or affect the result, we need not worry over its strict propriety.

relevant facts: his affidavit and the deposition of a co-worker, Rod Pafford. The Union points out that the affidavit is not signed or notarized, and insists it should not be considered. But the Union did not make this objection below, when the obvious technical oversight could have been corrected,[5] nor did the district court exclude the affidavit on this basis. We therefore consider it with the other evidence bearing on pretext. *See McBeth v. Himes*, 598 F.3d 708, 725 n.7 (10th Cir. 2010). Of course, we need consider only averments that are themselves admissible; those based on hearsay, for example, are not properly within our purview. *See Johnson v. Weld County*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). In that respect, we will not penalize the Union for failing to advance hearsay objections to specific statements in the affidavit, as the district court's quick ruling on the motion for summary judgment, in which it specifically allowed for "neither oral argument nor a reply brief," App. at 165, did not afford the Union an opportunity to review the affidavit and develop such particularized objections. *See generally Hopkins v. Okla. Pub. Emps. Ret. Sys.*, 150 F.3d 1155, 1161 n.5 (10th Cir. 1998).

---

[5]    Indeed, Powell submitted a signed and notarized version after judgment, but the district court refused to admit it into the record. Without appealing that post-judgment ruling, Powell filed a motion in this court to supplement the appellate record with the revised affidavit. Because, as explained above, we consider the original affidavit, we deny the motion to supplement as moot.

The district court held that Powell had made out a prima facie case of discrimination, which in the present context consisted of showing: "(1) [he] was a member of a group protected by Title VII; (2) [he] was qualified and requested referral for a job for which the union was referring applicants; (3) despite [his] qualifications, [he] was not referred; and (4) after [his] nonreferral, the union continued to refer applicants with [his] qualifications for available positions." *Mills v. Int'l Bhd. of Teamsters*, 634 F.2d 282, 285 (5th Cir. 1981); *see also Fischer v. Forestwood Co.*, 525 F.3d 972, 982-83 (10th Cir. 2008) (setting out substantially similar prima facie case in ordinary failure-to-hire context). That shifted to the Union the burden of articulating a legitimate, non-discriminatory justification for its actions. *Johnson*, 594 F.3d at 1211.

The Union articulated and substantiated a justification for not referring Powell for work with P.S. Cook, L.L.C., Gregory Piping Systems Inc., and Western Refractory Construction, Inc.: all had sent no-rehire letters requesting that he not be referred to their work sites due to problems associated with work performance, attendance, tardiness, and insubordination. Aplt. App. at 52-53; 67; 72. Under the CBA, each employer is the judge of a Union member's qualification for work, *id.* at 51-52, and these letters regarding Powell left him ineligible for work with the complaining companies, *id.* at 53. The Union's Business Manager, James Hansen, noted how unusual Powell's situation was, in that it was uncommon for a worker to have even one such letter in his file. *Id.* at

-8-

54. The combination of the CBA and the no-rehire letters established a legitimate, racially neutral basis for the Union's actions. That shifted the burden back to Powell to show that the Union's stated justification was merely a pretext for unlawful discrimination. *Johnson*, 594 F.3d at 1211. And on this critical point, the district court held that Powell failed to demonstrate a triable issue of fact.

Powell attempts to do so through essentially three different means. At certain points, he appears to take issue with the employers' criticism of his work performance. For example, he insists the no-rehire letter from P.S. Cook, which complained that he had worked only seven hours in a three-day period of twelve-hour shifts, overstated the nonattendance issue, in that it had only been a two-day period, some other laborers worked only eight-hour shifts in that period, and he had asked the foreman for the time off to attend to personal matters. This line of argument is a non-starter; it is a commonplace in employment law that the employer's perception of employee performance controls the pretext inquiry and can justify termination even if mistaken, *see, e, g*, *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1231 (10th Cir. 2000) (citing cases), and here that principle is uniquely bolstered by the CBA provision requiring the Union to defer to the employers' independent judgment. Even if the no-rehire letters were groundless (which was not shown here), Powell offered no evidence to prove the Union would have known that. On the contrary, the three separate no-rehire

-9-

letters would have been mutually corroborative as to the unsatisfactory nature of his work performance.

Second, Powell argues that Union efforts to contest a no-rehire request received for a white member, John Fulk, demonstrate that its capitulation in his case was racially biased.[6] But it is undisputed that Union business manager Hansen did contact the company that sent Powell's first no-rehire letter, to attempt to persuade it to allow Powell to return to work once he addressed the issues that led to the letter. *See* Aplt. App. at 53-54. While this proved unsuccessful due (in the employer's view) to Powell's refusal to take responsibility for his work issues, *id.* at 54, it is the Union's effort and not the employer's response that is material here. And though it does not appear that Hansen opposed the two subsequent no-rehire letters for Powell, there is also no evidence that the Union opposed *successive* no-rehire letters for Fulk or anyone else, leaving Powell without the similarly-situated comparator necessary to make out a case for disparate treatment by the Union. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (noting that to show discrimination through

---

[6]  The only evidence of this is a conclusory paragraph in Powell's affidavit, which states that Fulk had at some unspecified time been charged with driving under the influence while smoking marijuana, but does not say whether the charges were enforced or dismissed, or what Fulk's response to the incident had been (nor does it indicate Powell's direct personal knowledge of the matter). Aplt. App. at 110.

comparison with other employee, plaintiff "must establish [he] was similarly situated to [the comparator] in all relevant respects," including work history).

Finally, Powell argues that racial comments by some employers for whom he had worked (including Larry Gregory of Gregory Piping Systems), and Hansen's reaction to those comments, raised a triable issue of discriminatory animus behind the Union's actions. The district court discounted the employers' comments as hearsay and held that Hansen's own statements were too isolated and innocuous to demonstrate a racial bias.

Insofar as the employers' comments were reported in Powell's affidavit, the district court was correct to treat them as hearsay, in that Powell was repeating what he had heard second-hand from co-worker Rod Pafford, who witnessed the comments being made. But Pafford also directly testified to the matter in his deposition, so a hearsay problem would exist only if the comments were offered for the truth of the matter asserted therein. Since the comments were relevant for the racial attitudes they revealed and not for the truth of any factual assertions, they were not hearsay. *See, e.g.*, *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1249 (6th Cir. 1995), *overruled on other grounds as recognized in Bartlett v. Gates*, 09-3823, 2010 WL 4723786 at *3 (6th Cir. Nov. 15, 2010) (unpub.); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1423 (7th Cir. 1986), *abrogated on other grounds as recognized in Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989).

-11-

They were, however, of very limited significance, given that it is Hansen's alleged racial bias we are concerned with, not that of the third parties. Two of the instances were remote in time, occurring some three years before the events giving rise to this suit. And in both of those cases, where an employer had used a racial slur or stereotype in referring to Powell's laziness (itself a legitimate concern for an employer) and Pafford relayed the remarks to Hansen, Hansen did not adopt or approve the slur but told Pafford that Powell's issues were not Pafford's concern (there is no evidence that Powell himself ever complained to Hansen about the incidents). *See* Aplt. App. at 132-36.[7]

The third incident, involving Gregory Piping Systems, is more directly related to the operative events in this case, but it is the least indicative of racial animus. Larry Gregory removed Powell from a work site and sent a no-rehire letter to the Union after Powell had left a $40,000 Bobcat vehicle running in the field and, later, was not working where Gregory felt he was supposed to be working. *See* Aplt. App. at 113-14, 137-40. None of that reflects racial bias against Powell (who also stated that Gregory had requested him for work many

---

[7]     As to one of the incidents, Powell's affidavit adds that Hansen told Pafford "that he wasn't going to jeopardize the contract with [the employer] over some minor 'racial shit.'" Aplt. App. at 111. This is patent hearsay, purportedly spoken not to Powell but related second-hand to Powell by Pafford. Similarly inadmissible is Powell's statement that the foreman on the P.S. Cook job told Powell that Hansen had asked him to write a letter to "keep [Powell] out" of employment with P.S. Cook, *id.* at 113.

times, *id.* at 114). Even Pafford, who was at the site, conceded that leaving equipment running is "not the best thing to do," *id.* at 138, and that Gregory was "kind of right" about Powell not being where he was supposed to be "because we couldn't find [him]," *id.* at 139. Gregory did, however, characterize these legitimate criticisms as "acting black on me." *Id.* at 138. Because the criticisms were factually grounded, Pafford did not initially report the incident, but he did eventually tell Hansen about it. *See id.* at 139-40. According to Pafford, Hansen told him to just "worry about yourself" and "quit hanging out with [Powell]," who "was not doing good, going to get in trouble or something to that effect." *Id.* While Gregory's gratuitous comment about "acting black" was inappropriate, he had legitimate grounds for the no-rehire request honored by Hansen in accordance with the CBA. In sum, none of the incidents involving racially tinged comments by employers were sufficient to raise a triable issue of bias by the Union in its compliance with the no-rehire letters underlying this case.

Two last, underdeveloped arguments by Powell may be dismissed with little comment. In his statement of facts, Powell insinuates, with no supporting citation to the record, that the no-rehire letters "seemed to be prepared, not by the employers, but by the union, since [Powell] and his counsel found draft letters in his union file after obtaining discovery," Aplt. Br. at 11, and then only returns to the point near the end of his brief to ask rhetorical questions: "Why were there drafts of the no-rehire letters found in the personnel file of the plaintiff? What

-13-

inference is to be derived from this circumstance?  Did the [Union] prepare the letters for use by the employers?"  *Id.* at 23-24.  This is simply not adequate appellate argument, either factually or legally, and we decline to pursue the matter.  *See, e.g.*, *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994); *Brownlee v. Lear Siegler Mgmt. Servs. Corp.*, 15 F.3d 976, 977 (10th Cir. 1994). Similarly, Powell's passing criticism of the Union for its delay in telling him about the no-rehire letters, with no legal authority or developed argument to demonstrate what this has to do with his allegation of racial discrimination, is insufficient to require further discussion.

The judgment of the district court is AFFIRMED.  Appellant's motion to supplement the record is DENIED as moot.

Entered for the Court


David M. Ebel
Circuit Judge

-14-