FILED
United States Court of Appeals
Tenth Circuit

**March 31, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

IMELDA HERNANDEZ,

     Plaintiff - Appellant,

v.

JOHN E. POTTER, Postmaster General of
the United States,

     Defendant - Appellee.

No. 09-2202
(D. N.M.)
(D.C. No. 1:08-CV-00323-JCH-CG)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **BRISCOE**, and **O'BRIEN,** Circuit Judges.

---

After examining the briefs and the appellate record, this panel concludes that oral

argument would not materially assist the determination of this appeal. See Fed. R. App.

P. 34(a)(2); 10th Cir. R. 34.1(G). This case is submitted for decision without oral

argument.

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id*.

After her employment was terminated from the United States Postal Service (Postal Service) in New Mexico, Imelda Hernandez filed a civil rights suit claiming national origin, sex and age discrimination and claiming retaliation for questioning the amount on her pay check. She also claimed the Postal Service wrongfully withheld her pay and wrongfully discharged her. She appeals from the district court's grant of summary judgment in favor of the Postal Service. We affirm.

## I.        FACTUAL BACKGROUND

Hernandez began working for the Postal Service on February 18, 2006, as a Rural Carrier Associate (RCA) assigned to the Richard Pino Station in Albuquerque, New Mexico. An RCA fills in for regular rural mail carriers on vacation or extended leave. Pay is based on an evaluated system. Every route has an "evaluated" time for completion for which the RCA is paid (regardless of the hours actually worked) if the RCA works less than forty hours for any given week. If the RCA works more than forty hours in a week, however, she is paid for the actual hours plus overtime. RCAs are required to successfully complete a probationary period of ninety days actually worked or one year, whichever occurs first. Because Hernandez had not completed her probationary employment at the time of her discharge, she was an "at-will employee" whose employment could be terminated for any non-discriminatory reason.

On May 12, 2006, Hernandez delivered mail on Rural Route 54 which had an evaluated time of 9:29 hours. She completed the route in six hours. She was paid for the actual time she worked. Hernandez alleged she should have been paid the evaluated time (an underpayment of $54.12) even though she worked more than forty hours that week.

Mail carriers are given what is known as an "arrow key" – a master key which opens every customer mailbox in Albuquerque. Carriers must keep this key "attached to their clothing by a chain at all times while on duty" and "turn in [the key] daily on completion of duty." (R. Appellant's Appx. at 84.) On May 22, 2006, Hernandez was assigned to deliver mail on Rural Route 105. She claims the arrow key she was given was attached to a chain that was "too short" to be attached to her clothing and still be usable. (*Id.* at 25.) When she requested a longer chain she was "ignored."[1] (*Id.*) Hernandez lost the key while on her route when it fell onto a graveled area near a mail box. She was unable to hear the key drop because she has profound hearing loss, a fact she noted on her employment application. Hernandez searched for the key but could not find it. She borrowed RCA Jay Guberman's key and completed her route. When Guberman returned to the station, he informed supervisors Adam Trujillo and James Jarm that Hernandez had lost her key and he had lent her his key to finish her route. Although several employees looked for the key, it was not found until a customer discovered it two days later.

On May 24, 2006, Trujillo interviewed Hernandez who was accompanied by Joe Frey, a union steward. Hernandez admitted she had lost the key and it was not attached to her clothing while she was delivering the mail. Trujillo determined Hernandez would

---

[1] Postal Service supervisor James Jarm's affidavit states: "Each key is attached to a chain with a circular D ring that allows the chain to be attached at the carrier's belt or clothing while delivering mail. The Pino Station has a 500 foot roll of chain, allowing each carrier to adjust the length of the chain for his or her particular needs." (R. Appellant's Appx. at 88.)

be "separated"[2] from her employment.  Accordingly, on June 8, 2006, Trujillo issued

Hernandez a Notice of Separation effective June 10, 2006.

## II.  PROCEDURAL BACKGROUND

Hernandez filed a claim with the Equal Employment Opportunity Commission

(EEOC).  She then filed a four-count complaint in the United States District Court of

New Mexico claiming violations of "Title VII of the Civil Rights Act of 1964, (42 U.S.C.

§ 2000e, et seq., (Title VII)), the Civil Rights Act of 1991, the Rehabilitation Act of 1973

(29 U.S.C. §791, et seq.), and the Age Discrimination in Employment Act ("ADEA"), 29

USC § 621 et seq."  (Appellant's Appx. at 20.)  The counts included: age discrimination

(Count I); national origin discrimination (Count II); sex discrimination (Count III); and

reprisal/retaliation (Count IV).

The Postal Service filed a motion for summary judgment on all claims.  It argued

Hernandez's age discrimination claim failed because she was thirty-six years old and,

therefore, she was not in the statutorily protected age group.  Her national origin and sex

discrimination claims were without merit because she failed to show any inference of

discrimination in the termination of her probationary employment.  Her discrimination

claims based on unequal pay were defeated because the record established she was paid

equally to all other RCA employees and was fully paid for her work on May 12, 2006.

The Postal Service argued her retaliation claim, based on her complaint to her supervisors

---

[2] Separation of probationary employees is distinct from termination of non-probationary employees.  A probationary employee does not have access to a grievance procedure and, unlike permanent employees, "cause" is not required.  (R. Appx. at 82.)

she had not been fully paid for her work on May 12, did not include an allegation she told her supervisors she felt the underpayment was discriminatory. Thus, her complaint did not qualify as protected activity. Moreover, there was no evidence Trujillo, who was responsible for her termination, was aware of her complaint. Finally, although Hernandez cited the Rehabilitation Act as a jurisdictional basis for her claims, her charge to the EEOC and her complaint in federal court did not allege any facts to support a claim for wrongful termination due to a disability, nor was there a separate count in the Amended Complaint asserting a disability claim. Even if the claim had been asserted in her Amended Complaint, the Postal Service contends the claim was not exhausted in the charge to the EEOC and, in any event, the Postal Service had legitimate, non-discriminatory reasons for terminating her employment.

In response to the summary judgment motion, Hernandez's argument, in its entirety, stated:

> There is little that is complex about this case. Imelda Hernandez, a Mexican National who is a citizen of the United States, was hired with full knowledge on the part of the United States Postal Service that she was hearing impaired. She was not paid for work that she performed. She protested this pay disparity. No pay adjustment was made. Ms. Hernandez also requested a proper device for securing the "Arrow Key" to her person, and her request was ignored. When the unsecured "Arrow Key" fell, she was unable to hear it. She reported the lost arrow key and it was subsequently found. Instead of working with Ms. Hernandez to accommodate her disability, the United States Postal Service fired her. There was no effort to accommodate her disability, and no dialogue intended to address her need for disability accommodation. Instead, there was a denial of the laying of blame for an accident that was purely the result of Ms. Hernandez's hearing loss. This was a wrongful termination and a violation of the Americans With Disabilities Act. Summary Judgment should not issue.

(*Id.* at 122.)

The district court granted the Postal Service's summary judgment motion. Despite Hernandez's apparent abandonment of her age, sex and national origin discrimination claims, the district court thoroughly discussed and rejected each claim. As to the disability claim addressed in Hernandez's response to the summary judgment motion, the district court noted this claim was not pled, there was no evidence she requested accommodation relating to her hearing loss and, if there were, it was not administratively exhausted because it was not referenced in her EEOC complaint.

### III. DISCUSSION

"Because this case comes to us on summary judgment, we assess all of Ms. [Hernandez's] claims *de novo*: that is, we will affirm the district court's disposition only if our independent review of the record, viewing the facts in the light most favorable to Ms. [Hernandez], reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1207 (10th Cir. 2010).

Hernandez does not argue the district court improperly granted summary judgment on her statutory age, sex, and national origin discrimination claims and her retaliation claims. Nor does she address the exhaustion of her disability claim. Instead, she argues "it is clear that the circumstances of this case raise the question of whether the Plaintiff was terminated in good faith, and whether her discharge violated public policy as it pertains to the attitude of [the Postal Service] concerning discrimination for persons with disabilities." (Appellant's Br. at 16.) We pay scant, if any, attention to arguments not

- 6 -

justified by pleadings or presented to the district court.

Hernandez cites no law or record evidence for her public policy proposition.[3] She discusses one conversation she allegedly had with another Postal Service employee who told her that she, too, had lost a Postal Service key at one time but was not fired. As the district court noted in its order, this hearsay is not admissible evidence. *See Johnson*, 594 F.3d at 1209 ("When a proper hearsay objection has been made and preserved, it is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." (quotations omitted)). Even if this conversation were somehow admissible (how, Hernandez does not explain), Hernandez presents no evidence this employee was similarly situated to her. There is no evidence the employee was on probation when the key was lost, no evidence regarding the date of the alleged loss or who supervised the employee nor is there any other evidence indicating the circumstances were comparable to Hernandez's. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) (apart from claims of company-wide discrimination, "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline")

---

[3] Hernandez cites one case, *Sydnes v. United States*, where two employees filed suit against their employer and the United States, claiming they were fired in retaliation for reporting alleged security breaches and asserting claims, among other things, for wrongful discharge in violation of public policy in violation of Colorado common law. 523 F.3d 1179, 1182, 1184 (10th Cir. 2008). Normally, a public policy claim is based on state law. *Id.* at 1184; *see also Gullickson v. Sw. Airlines Pilots' Ass'n*, 87 F.3d 1176, 1187 (10th Cir. 1996). Hernandez did not claim a violation of public policy in her complaint and she cites no authority for maintaining a separate public policy claim based upon a federal statute such as the Rehabilitation Act.

(quotations omitted). Hernandez also argues the Postal Service's collective bargaining agreement provides for progressive discipline. As was pointed out by the district court, this reference is to the Postal Service's employment provisions addressing permanent employees; it is not applicable to probationary employees like Hernandez.

In her reply brief, Hernandez suggests she was terminated because her "supervisors wanted her out of the way in case there were inquiries from higher up" because the circumstances of the loss of her key "reflect very poorly upon the management of the Station." (Appellant's Reply Br. at 7.) This argument was not raised to the EEOC or the district court and, in any event, her supervisors' wish to hide their mismanagement is not illegal discrimination. *See Timmerman*, 483 F.3d at 1120 (Title VII does not prohibit "an employer from making hasty decisions that appear harsh; what [it] forbid[s] are decisions made with discriminatory animus."). Although Hernandez may believe she should have been treated differently because she has a hearing problem and did not hear the key drop, there is no issue of fact, material or otherwise, raising an inference of discrimination by the Postal Service on any basis. The undisputed facts clearly establish Hernandez was terminated because she lost the arrow key and did not immediately notify a supervisor of the loss.

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge