Marvin **FESTER**, Plaintiff–Appellee,

v.

**FARMER BROS. CO.**, a California corporation, Defendant–Appellant.

No. 01–1359.

United States Court of Appeals, Tenth Circuit.

Oct. 17, 2002.

David A. Lane, Mari A. Newman, Killmer & Lane, Denver, CO, for Plaintiff–Appellee.

Paul David Godec, Peter C. Middleton, Colleen M. Rea, Stromberg, Cleveland, Crawford & Schmidt, Denver, CO, for Defendant–Appellant.

Before BRISCOE, ANDERSON and O'BRIEN, Circuit Judges.

## ORDER AND JUDGMENT[*]

BRISCOE, Circuit Judge.

Defendant Farmer Bros. Co. appeals a jury verdict in favor of plaintiff Marvin Fester on plaintiff's age discrimination claim brought under 29 U.S.C. § 623. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

### I.

In February 1997, Farmer Bros., a coffee and tea distributor, discharged Fester from his position as assistant branch manager for its Denver branch, a position he had held for twenty years. Fester, who was fifty-eight years old, had been employed by Farmer Bros. for approximately thirty-seven years. Richard Archer, the branch manager of the Denver branch, was also discharged.

Farmer Bros. claimed Fester's discharge was the result of an investigation into significant problems at the Denver branch. A complaint letter from Jerry Runden, an employee at the Denver branch, regarding problems at the branch triggered the investigation. Al Henshaw, the division manager, and Dennie Rawson, the district manager, conducted the investigation, and Henshaw prepared a report summarizing their findings. Ken Carson, vice president of sales, claimed that he fired Fester and Archer because, after reviewing the report, he believed they were responsible for the problems at the Denver branch. Carson claimed that Fester's age did not play a role in his decision and that the decision was based solely on Fester's poor work performance. Fester denied Carson's allegations and attacked the stated reasons for his discharge as a mere pretext for age discrimination.

Fester filed suit against Farmer Bros. for breach of contract, promissory estoppel, outrageous conduct, and for age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623. In April 2001, the jury returned a verdict in favor of Farmer Bros. as to Fester's breach of contract claim. In addition, the district court granted Farmer Bros.' motion for judgment as a matter of law on Fester's outra-

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

geous conduct claim and entered judgment in favor of Farmer Bros. on Fester's promissory estoppel claim. The jury found that Farmer Bros.' termination of Fester was in violation of the ADEA and awarded Fester $158,224 in damages, and found that Farmer Bros.' conduct was willful. Based on the finding of willfulness, the district court awarded Fester an additional $158,244 in liquidated damages. The court also ordered that Fester be reinstated to his former position as assistant branch manager and awarded him attorney fees and costs.

## II.

■ At trial, the district court refused to admit the investigation report as inadmissible hearsay. Farmer Bros. argues that the court erred because the investigation report was not offered for the truth of the matter asserted, but rather as evidence of Carson's state of mind when he made the decision to discharge Fester. The district court's evidentiary rulings are reviewed for an abuse of discretion. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1433 (10th Cir.1993). This is a deferential standard of review and the district court's rulings will not be disturbed unless the court made a clear error in judgment. *Id.*

When an ADEA case is tried to a jury, the employer typically proffers one or more nondiscriminatory reasons for the adverse employment decision taken against the plaintiff. *E.g., Dodoo v. Seagate Tech., Inc.*, 235 F.3d 522, 528 (10th Cir.2000). It is unnecessary for these reasons to be wise, fair, or even accurate. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999). Instead, it is sufficient that the employer "honestly believed those reasons and acted in good faith upon those beliefs." *Id.*

For example, in *Faulkner*, the plaintiffs brought an age discrimination claim against their employer under the ADEA. At trial, the district court admitted out-of-court statements that helped the employer establish its legitimate business reasons for the adverse employment decisions. After a jury returned a verdict in favor of the employer, the plaintiffs appealed arguing, *inter alia*, that the trial court erred in admitting the out-of-court statements because they were inadmissible hearsay. We disagreed and affirmed the trial court's ruling because we found that the evidence was nonhearsay as it was offered to establish the employer's "state of mind in making its hiring decisions and was not offered for the truth of the matter asserted." 3 F.3d at 1434.

Here, Farmer Bros. claimed it had a legitimate, nondiscriminatory reason for discharging Fester. Carson, the Farmer Bros. officer responsible for the decision, testified that he fired Fester and Archer after determining they were the cause of the problems at the Denver branch. He claimed that his decision was based in part on the findings of the report. The relevant inquiry was whether Carson honestly believed the findings in the report and acted in good faith on those beliefs, not whether the report's findings were accurate. Thus, the report was nonhearsay because it was being offered to establish Carson's state of mind in making the decision to discharge Fester and was not offered for the truth of the matter asserted. The district court abused its discretion in excluding the report as hearsay.

■ We next determine whether exclusion of the report was harmless error. *See Polys v. Trans–Colorado Airlines, Inc.*, 941 F.2d 1404, 1407 (10th Cir.1991). If the excluded evidence would have added nothing new to the evidence already presented, or if the outcome of the trial would have

been the same if the excluded evidence had been presented, the district court's error in excluding the evidence is harmless. *Id.* at 1408 n. 3.

At trial, Carson testified that he first learned of the problems at the Denver branch when Runden filed the complaint. Carson stated that he ordered Henshaw and Rawson to investigate the allegations and to keep him informed of the status and results of the investigation. Carson also testified about his conversations with Henshaw regarding specific allegations raised in the complaint. Carson testified that he reviewed Henshaw's report and decided to discharge Fester based on the findings of the report and his telephone conversations with Henshaw. Carson testified that, after reviewing the report, he believed Archer and Fester were responsible for the problems in the Denver branch. He was also permitted to testify as to the information in the report that supported each statement in Fester's termination notice. For example, he testified that the report and employee interviews confirmed that Fester was not providing or maintaining adequate coffee-brewing equipment to service existing customers and was not supervising branch employees. In addition to Carson's testimony, a copy of Runden's complaint with handwritten notes from Carson was admitted into evidence and Carson was allowed to explain the notes at trial.

In addition to Carson's testimony, Henshaw testified as to the results of the investigation, the problems he found at the Denver branch, his reports to Carson, and his interview with Fester. Henshaw's notes from his interview with Fester were admitted into evidence. Moreover, Rawson, who assisted in the investigation, testified as to the investigation and his interview with Fester. Runden testified as to the content of each of the allegations in his complaint, and the complaint itself was admitted into evidence. Finally, Gregory Hebda, one of the employees interviewed during the investigation, testified as to the investigation and his complaints against Fester.

Given the voluminous amount of testimony and exhibits admitted regarding the results of the investigation and Carson's reasons for discharging Fester, we conclude the district court's error in excluding the report itself was harmless. Several employees whose interviews were summarized in the report did not testify at trial, but Farmer Bros. was not prevented from calling them as witnesses and the gist of the report and its bearing on Carson's decision to fire Fester were adequately conveyed to the jury. Although the report should have been admitted, it would have added little to the evidence presented at trial and would not have impacted the decision reached by the jury.

## III.

Farmer Bros. argues that the district court erroneously denied its motion for judgment as a matter of law on Fester's ADEA claim. We review a district court's denial of a motion for judgment as a matter of law de novo, applying the same standard applied by the district court. *Black v. M & W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir.2001). Under Rule 50, a court should only grant a motion for judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). When entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, "the court must

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* Weighing the evidence, drawing inferences from the facts, and making credibility determinations are functions for the jury, not a judge. *Id.* "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Consistent with this language, we have held that once an ADEA case reaches trial, "the single overarching issue" is whether "adverse employment action was taken against [the plaintiff] on the basis of age." *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 744 (10th Cir.1991).

Farmer Bros. frames its arguments in terms of the familiar burden-shifting framework in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), asserting that Fester failed to establish two elements of his prima facie case or that Farmers Bros.' proffered reasons were pretextual. Although we could ignore these arguments and focus solely on whether the evidence presented at trial was sufficient to allow the jury to find intentional discrimination on the part of Farmer Bros., *e.g., Dodoo,* 235 F.3d at 528 (declining to address "the intermediate issue of whether [plaintiff] established a prima facie case at trial"), we will address Farmers Bros.' arguments as presented. *See Reeves,* 530 U.S. at 151–54 (evaluating trial evidence in terms of *McDonnell Douglas* framework). This will highlight why the evidence presented at trial was

sufficient to allow the jury to find that Farmer Bros. intentionally discriminated against Fester because of his age.

*Prima facie case of age discrimination*

Farmer Bros. argues that Fester did not establish a prima facie case of age discrimination. To establish a prima facie case, a plaintiff typically must show (1) that he was within the protected age group; (2) that he was doing satisfactory work; (3) that he was discharged; and (4) that his position was filled by a younger person. *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998). We have also held that a plaintiff can satisfy the fourth element by showing that he "was treated less favorably than others not in the protected class." *Bullington,* 186 F.3d at 1315–16 (quoting *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 531 (10th Cir. 1998)). However, a plaintiff is not required to show that he was replaced by someone outside the protected class. *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

In *Perry v. Woodward,* 199 F.3d 1126 (10th Cir.1999), we stated that a plaintiff may satisfy the fourth element in a wrongful termination case by showing that his former job was not eliminated after his discharge, or by showing that someone else was hired to replace him. *Id.* at 1135, 1138. *Perry,* however, involved a § 1981 racial discrimination claim and we have not addressed the issue of whether the *Perry* test applies to ADEA claims. *See Munoz,* 221 F.3d at 1166 n. 3. Because Fester can satisfy both tests, it is unnecessary to address this issue.

■ Farmer Bros. argues that Fester did not satisfy the second or fourth requirements of the prima facie case. Under the second requirement, Fester must show that he was doing satisfactory work. At trial, Rawson testified that he had

worked with Fester for twenty-four years and was unaware of any write-ups that Fester had received and believed that Fester was a good worker. Rawson also testified that as far as he knew, Fester had always received excellent performance evaluations. Rawson further testified that, based on their investigation, he and Henshaw did not believe that Fester should have been discharged. Henshaw testified that, after conducting the investigation, he concluded that a majority of the problems in the Denver branch were caused by Archer and that Fester was doing the best he could and was trying to do both his and Archer's jobs. Runden testified that almost all of the allegations in his complaint applied only to Archer. Runden stated that the only allegation applicable to Fester was that Fester would complain about or "belittle" upper-management. In addition, three of Fester's former customers testified that he provided them with excellent service. The owner of a restaurant in the Denver area testified that she purchased coffee from Farmer Bros. and had worked with Fester for approximately twenty years. She characterized Fester's job performance as "consistent" and "excellent." App. Vol. 7 at 1409–19. Another customer, who had worked with Fester since 1988, testified that he "wouldn't have any trouble placing [Fester] in the top ten to 15 of [the] 500 or more" customer representatives with whom he had worked. App. Vol. 9 at 1982. Based on this testimony, we reject Farmer Bros.' assertion that Fester failed to satisfy the record element of the prima facie case.

█ Farmer Bros. also argues that it was entitled to judgment as a matter of law because Fester did not satisfy the fourth element of the prima facie case since he was not replaced by a younger employee. Runden, who was in his late thirties when Fester was discharged, testi-fied that within two months of Fester's discharge, Henshaw offered him the position of assistant manager of the Denver branch. Rawson also testified that Henshaw offered Fester's position to Runden. Henshaw testified that he ordered business cards for Runden with the title "assistant branch manager," App. Vol. 10 at 2158, and the order form for the business cards was admitted into evidence. The billing invoice for the business cards was dated March 26, 1997, less than two months after Fester was discharged. Runden testified that Henshaw subsequently rescinded the offer because a lawyer suggested to management that the position not be filled at that time.

Henshaw denied offering the position to Runden and stated he only told Runden that he was recommending him for the position. Henshaw also denied that the offer was rescinded based on the advice of a lawyer. Carson testified that the position was not filled because of a decrease in business volume and that he did not give Henshaw authority to fill the position. Carson also testified that he neither sought nor received the advice of counsel with respect to filling Fester's position.

Drawing all reasonable inferences in Fester's favor, there was sufficient evidence for the jury to conclude that Farmer Bros. offered the position of assistant branch manager to Runden less than two months after Fester's discharge. Although both Carson and Henshaw denied that Runden was approved to fill the position, or that they had consulted legal counsel, credibility determinations are functions for the jury, not the trial court. *Reeves*, 530 U.S. at 150. In addition, in ruling on a motion for judgment as a matter of law, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

*Evidence of pretext*

■ The crux of Farmer Bros.' legitimate, nondiscriminatory reason for discharging Fester was that he was not satisfactorily performing his duties as assistant branch manager. When reviewing whether an employer's reasons were pretextual, a court does not "sit as a super-personnel department that second-guesses" an employer's business decisions with the benefit of twenty-twenty hindsight. *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813–14 (10th Cir.2000). However, "evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination." *Id.* at 814 (internal quotations omitted). Fester presented extensive evidence that Archer was responsible for the problems at the Denver branch and that Fester had been an excellent employee at Farmer Bros. for thirty-seven years. Neither Henshaw nor Rawson, the employees who conducted the investigation, believed that Fester should be discharged. Moreover, Henshaw testified that he believed Carson had decided to discharge Fester before the investigation was completed and before they had a chance to interview Fester.

Based on Fester's showing that he was doing satisfactory work, that Carson had decided to discharge him prior to completion of the investigation, and that Farmer Bros. had intended to replace him with a younger employee until legal counsel advised otherwise, there was sufficient evidence for the jury to conclude that Farmer Bros.' proffered explanation was pretextual. Because there was evidence to support the jury's disbelief of the reasons put forth by Farmer Bros., it was permissible for the jury to infer the ultimate fact of discrimination. *Reeves*, 530 U.S. at 147.

[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Id.* at 147–48 (internal citation omitted). The district court did not err in denying Farmer Bros.' motion for judgment as a matter of law because a rational factfinder could have concluded that the decision to discharge Fester was discriminatory.

*Evidence that violation of ADEA was willful*

■ Under the ADEA, a "willful" violation gives rise to liquidated damages. 29 U.S.C. § 626(b). Here, the jury found that Farmer Bros.' violation of the ADEA was willful and the court awarded Fester liquidated damages. Farmer Bros. argues this award was in error because there was no evidence to support the jury's determination that its violation of the ADEA was "willful."

A violation of the ADEA is "willful," if the

employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.... Once a "willful" violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that age was the predominant, rather than a determinative, factor in the employment decision.

*Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617, 113 S.Ct. 1701, 123 L.Ed.2d 338

(1993). Based on the evidence that Fester's job was offered to a younger employee and subsequently was rescinded on the advice of counsel, and Carson's and Henshaw's denial that an offer was made or rescinded on the advice of counsel, the jury reasonably could have concluded that Farmer Bros. knew its conduct was prohibited by the ADEA. The district court's award of liquidated damages was not erroneous.

## IV.

■ The district court ordered Farmer Bros. to reinstate Fester to his former position. Farmer Bros. argues that reinstatement is inappropriate because of the hostility that exists between the parties and because Fester's former position has been eliminated. In an ADEA case, the court can order front pay or reinstatement in order to make the victim whole. *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir.1989). Reinstatement, however, is the preferred remedy under the ADEA and should be ordered whenever appropriate. *James v. Sears, Roebuck & Co.,* 21 F.3d 989, 997 (10th Cir.1994). "Reinstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *Id.* (internal quotations omitted). Other situations in which reinstatement may not be appropriate are where no comparable positions are available; the employer-employee relationship has been irreparably damaged by animosity caused by litigation; or the time period for which front pay would be awarded is relatively short, *e.g.,* the employee is close to retirement. *Anderson,* 861 F.2d at 638. The decision to order reinstatement rests with the trial court and that decision is reviewed for an abuse of discretion. *James,* 21 F.3d at 997.

Farmer Bros. presents the following evidence to support its position that reinstatement is inappropriate: (1) In his trial brief, Fester admitted that "[w]hile reinstatement is the preferred remedy under the ADEA, it may not be appropriate when, *as here,* the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible," App. Vol. 3 at 727 (emphasis added); (2) due to a decrease in sales volume, Fester's former position has been eliminated and no comparable positions are presently available; (3) because Fester's position is no longer available, Farmer Bros. probably would have to discharge a current employee to reinstate Fester; and (4) the time period for awarding front pay was extremely short. However, Fester argues that reinstatement is appropriate because he does not harbor any hostility toward Farmer Bros.

The evidence that Fester's position no longer exists at the Denver branch due to a decrease in sales volume weighs against ordering reinstatement. However, as discussed, the evidence also indicated that Fester's position was to be filled by a younger employee until Farmer Bros.' legal counsel advised against such a decision. Therefore, whether Fester's position would be filled appeared to be tied to ADEA litigation strategy rather than need. There also appears to be very little evidence, if any, of *extreme hostility* between the parties. If Fester is reinstated, his contact with Carson would be minimal because Carson works out of California, not Colorado, and he does not directly supervise the Denver branch. Notwithstanding Fester's initial argument that reinstatement was inappropriate, we conclude the trial court did not abuse it discretion in ordering reinstatement.

## V.

Finally, Farmer Bros. argues the district court erred in denying its motion for new trial. We will affirm the district court's denial of the motion absent a showing of "a manifest abuse of discretion." *Woolard v. JLG Indus., Inc.*, 210 F.3d 1158, 1168 (10th Cir.2000) (internal quotations omitted). We focus our inquiry on whether the verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.*

*Evidence regarding outrageous conduct claim*

 Farmer Bros. argues that the district court erred in not dismissing Fester's outrageous conduct claim before trial because the claim was clearly without merit and the court did not have subject matter jurisdiction over the claim. The district court denied Farmer Bros.' motion for summary judgment as to the outrageous conduct claim, but subsequently granted its motion for a directed verdict as to that claim. Farmer Bros. argues this "delay" by the court allowed Fester to introduce highly prejudicial evidence at trial. Assuming, *arguendo*, that the district court did not have jurisdiction over the claim or that it failed to grant the motion for summary judgment, the court's decision to deny the motion for new trial based on admission of this evidence was not an abuse of discretion.

The district court's evidentiary rulings are reviewed for an abuse of discretion. *Faulkner*, 3 F.3d at 1433. This is a deferential standard of review and the district court's rulings will not be disturbed unless we have a firm and definite belief that the court made a clear error in judgment. *Id.* Moreover, even if the trial court abused it discretion, this court will overlook the error if it was harmless. *Polys*, 941 F.2d at 1407.

First, Farmer Bros. argues that the evidence regarding how Archer was discharged was irrelevant and prejudicial. At trial, evidence was admitted that Rawson and Henshaw went to Archer's mother-in-law's home to terminate Archer. When they arrived, Archer, who was recovering from a recent heart complication, was lying in bed. Rawson and Henshaw went into the bedroom and notified Archer that he was being discharged and produced a copy of the termination notice for him to sign. Evidence was also admitted that Henshaw informed Carson that he was reluctant to terminate Archer because of Archer's health concerns, and that Carson replied, "I don't give a shit." App. Vol. 10 at 2149.

Fester argues this evidence was relevant to his outrageous conduct claim that was based on the allegedly false accusations regarding his work performance and the manner in which he was terminated. It is unclear, however, how the manner in which *Archer* was terminated was relevant to *Fester's* outrageous conduct claim. The evidence may have been relevant to his ADEA claim because "[a]s a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir.1990). Evidence regarding Archer's termination, who was within the ADEA's protected age group, was potentially relevant to Farmer Bros.' discriminatory intent toward Fester. However, no evidence was presented that Archer's termination involved age discrimination. Indeed, the evidence portrayed Archer as the employee responsible for the problems in the Denver office. Therefore, the relevance of this evidence to Fester's ADEA claim was minimal at best.

Because the relevance of the evidence, if any, regarding Archer's termination was

substantially outweighed by its prejudicial effect, the district court abused its discretion in admitting this evidence. *See* Fed. R.Evid. 403. However, this error was harmless because, as discussed, there was sufficient evidence to establish Fester's ADEA claim without the jury considering the Archer termination evidence. Further, this evidence could not have inflated the jury's damages award because the award was limited to back-pay.

Farmer Bros. also argues the district court erred in allowing Fester to admit evidence as to his non-economic damages at trial. Farmer Bros. argues that because the ADEA does not permit recovery of non-economic damages, Fester's emotional distress evidence was relevant only to his outrageous conduct claim. Thus, Farmer Bros. argues, "but for" the district court's error in not granting its motion for summary judgment as to the outrageous conduct claim, this prejudicial evidence would not have been admissible.

At trial, Fester, his wife, and his physician testified that Fester was emotionally distressed after his discharge and even contemplated suicide. In addition, during plaintiff's closing argument, Fester's attorney told the jury there was "not a damn thing in the world" that the jury could do about Fester's emotional distress because it could only award back-pay damages. App. Vol. 11 at 2421. This evidence clearly did not prejudice Farmer Bros. The evidence did not affect the amount of the jury verdict because the jury only awarded Fester back-pay, an amount that Farmer Bros. does not dispute. It is also unclear how Fester's attorney's reference to the jury's inability to award damages for emotional distress prejudiced Farmer Bros. This statement was a correct statement of the law. In addition, the judge instructed the jury that the "[s]tatements and arguments of counsel are not evidence in the

case." App. Vol. 17 at 3768. The judge also instructed the jury that it "must not be influenced by sympathy, bias, or prejudice for or against any party to this case." *Id.* at 3770. This court must assume the jury followed these explicit instructions. *Spulak,* 894 F.2d at 1157.

### Evidence of job offer to Runden

■ Farmer Bros. argues that the court erred in allowing Runden to testify as to Henshaw's statement that he was rescinding the job offer based on the advice of counsel because this testimony was "double hearsay." This evidence was clearly relevant to Fester's ADEA claim. Thus, the issue is whether it was inadmissible hearsay. Under Rule 805, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed.R.Evid. 805. Accordingly, it is necessary to look at the alleged statement of Henshaw and the alleged statement of the Farmer Bros. attorney.

Under Rule 801(d)(2)(D), an out-of-court statement is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R.Evid. 801(d)(2)(D). In order for Henshaw's statement to qualify as a party admission under this section, Henshaw "must have actually been involved in the decision to hire or fire the person bringing the discrimination charge." *Goss v. George Washington Univ.,* 942 F.Supp. 659, 662 (D.D.C.1996). It is undisputed that Henshaw, the division manager in charge of the Denver branch, led the investigation that resulted in Fester's discharge. It is also undisputed that Henshaw is the Farmer Bros. employee who notified Fester of his termination. Henshaw's statement was clearly within the

scope of his employment and was nonhearsay.

Under Rule 801(d)(2), "[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *United States v. Margiotta,* 662 F.2d 131, 142–43 (2d Cir.1981); *see also Purgess v. Sharrock,* 33 F.3d 134, 143–44 (2d Cir. 1994) (holding that statement made by defense counsel was admissible under Rule 801(d)(2)); *United States v. Sanders,* 979 F.2d 87, 92 (7th Cir.1992) (same); *Hanson v. Waller,* 888 F.2d 806, 814 (11th Cir.1989) (same). Here, the alleged statement was from a Farmer Bros. attorney concerning Farmer Bros.' hiring practices. The alleged statement appears to have been within the attorney's scope of employment. Neither Runden nor Henshaw, however, identified the lawyer by name. "While it is not essential that the employee's name be ascertained before his statement is admitted against his employer, the employer should be given information reasonably definite for identification both in order that his authority may be tested and that his hearsay statement, if introduced, may be rebutted." *Northern Oil Co. v. Socony Mobil Oil Co.,* 347 F.2d 81, 85 (2d Cir. 1965). Although the name of the lawyer was not produced, the employee who allegedly heard the statement (Henshaw) testified at trial. However, Henshaw denied making the alleged statement to Runden. In addition, Henshaw and Carson denied discussing any employment-related decisions with an attorney. The credibility of this testimony was a determination for the jury. Farmer Bros. was provided sufficient information to identify the lawyer responsible for the alleged statement, but it chose to deny that such statements were made. Because both of the alleged out-of-court statements were party admissions, Runden's testimony was nonhearsay. The district court did not abuse its discretion in admitting this evidence.

*Testimony by Farmer Bros. employees and customers*

Next, Farmer Bros. argues that the district court erred by allowing current and former Farmer Bros. employees and customers to testify about Fester's job performance and their belief of the appropriate level of discipline. This testimony was relevant because "evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination." *Tyler,* 232 F.3d at 814 (internal quotations omitted). Moreover, any error was harmless because the judge instructed the jury as follows: "You should not find that the decision is unlawful just because you may disagree with the Defendant's stated reasons or because you believe the decision was harsh or unreasonable, as long as the Defendant would have reached the same decision regardless of the Plaintiff's age." App. Vol. 17 at 3775. The judge properly instructed the jury and this court must assume the jury followed these explicit instructions. *Spulak,* 894 F.2d at 1157.

*Cumulative effect of errors*

Farmer Bros. argues that the cumulative effect of the district court's errors warrants a new trial on Fester's ADEA claim. However, as discussed, none of the issues raised by Farmer Bros. warrant a new trial. Nor does the "cumulative effect" of those alleged errors change this result.

Because the verdict was not "clearly, decidedly, or overwhelmingly against the weight of the evidence," *Woolard,* 210 F.3d at 1168, the district court did not abuse its

discretion in denying Farmer Bros.' motion for new trial.

AFFIRMED.