**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**August 3, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

MICHAEL CRUZ,

    Plaintiff - Appellant,

v.

FARMERS INSURANCE EXCHANGE;
TRUCK INSURANCE EXCHANGE;
FIRE INSURANCE EXCHANGE; MID-
CENTURY INSURANCE COMPANY;
FARMERS NEW WORLD LIFE
INSURANCE COMPANY,

    Defendants - Appellees.

No. 21-1069

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CV-02337-MEH)**

_____

Ralph E. Lamar, Allentown, Pennsylvania, for Plaintiff-Appellant.

James R. Holland, II, (Laura Bailey Brown of Fisher & Phillips, LLP, with him on the brief), Kansas City, Missouri, for Defendants-Appellees.

_____

Before **MORITZ**, **KELLY**, and **BRISCOE**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

Michael Cruz sued defendants alleging that they terminated his contract, under

which he sold defendants' insurance products, on the basis of race, in violation of

42 U.S.C. § 1981. In support, Cruz relied on a statement allegedly made by his district manager, which Cruz argued represented direct evidence of discrimination, as well as circumstantial evidence. The district court granted summary judgment to defendants, ruling that the district manager's statement was inadmissible hearsay and that Cruz's circumstantial evidence did not otherwise demonstrate discriminatory intent. Without considering Cruz's circumstantial evidence, we reverse because the district manager's alleged comment was not inadmissible hearsay; it was admissible under Federal Rule of Evidence 801(d)(2)(D) as a party-opponent admission made by an agent within the scope of the agency relationship. And because that admission constitutes direct evidence of discrimination, it precludes summary judgment for defendants.

## Background

Cruz, a Hispanic man of Mexican-American heritage, brought this action against Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company (collectively, Farmers). For over 30 years, Cruz sold Farmers insurance policies as an independent contractor under an Agency Appointment Agreement, which we refer to here simply as the contract. Although Farmers classifies insurance agents as independent contractors, it maintains a hierarchy of managers who are responsible for certain geographic regions: Territory managers oversee area sales managers. And area sales managers oversee district managers, who in turn oversee insurance agents within their

2

divisions. Farmers classifies district managers as independent contractors, but area sales managers and territory managers are employees.

The events leading to Cruz's lawsuit began in January 2017 when Dan French, a local resident, called Cruz's office and asked to be removed from Farmers' mailing list. According to Cruz, French was rude and disrespectful, leading Cruz to hang up the phone. French called back, and Cruz hung up again. After the calls, French located Roy Smith, a top Farmers executive, on LinkedIn and messaged him to complain that Cruz was unprofessional. Smith forwarded the complaint, which was eventually sent to Todd Brooks, a territory manager. Brooks asked Curt Elsbury, an area sales manager, and Clint Sales, a district manager, to investigate and resolve the issue. To begin the investigation, Sales emailed Cruz to arrange a phone call to discuss the incident. Sales stated in his email that he would need to report back to Brooks the next morning.

Meanwhile, French called back a third time when Cruz was out of the office. This time, French spoke to Kandace Diekman, Cruz's wife and office assistant. According to Diekman, French was "raging," "belligerent," and "screaming." App. vol. 2, 242, 244. She testified that French said, "I've already called twice, and nobody's helping me stop this mail, and being as you're not going to fix it, I'm going to come down to the office and fix it." *Id.* at 242. Diekman hung up after French called her profane names and refused to calm down.

Shortly after, Diekman called Sales to inform him about the call. Sales asked Diekman to send him an email describing what happened. Relevant to this appeal, Diekman wrote the following sentence at the end of the email: "I'm not afraid[,] and we

3

are going to be open[;] I carry[,] and if I feel threatened[,] I will blow a hole in him the size of Uganda."[1] *Id.* at 285.

Sales continued to investigate, asking Cruz and Diekman to send a timeline of events and telling them he would need to send the information to the territory office. Cruz provided Sales with a timeline, and Sales spoke with Cruz and Diekman multiple times regarding the incident. Based on the information Sales gathered, he emailed Brooks and Elsbury to summarize the incident.

Elsbury then sent Cruz a letter outlining Sales's investigation into the French complaint. Elsbury stated that the territory office had reached out to French, listened to his perspective on the incident, and resolved the issue by removing French from Farmers' mailing list. Although Elsbury acknowledged Cruz's position on the issue, as relayed by Sales, Elsbury nevertheless cautioned Cruz to maintain professionalism and uphold the Farmers brand. Elsbury concluded by stating, "No further actions will be taken at this time, but I do want to remind you that any further incidents could jeopardize your [contract]." *Id.* at 286.

As it turned out, that was not the end of the matter. Farmers contends that when Elsbury said no further action would be taken, Brooks and Chara Kautz, a territory agency manager who reported to Brooks, were unaware of Diekman's email. After

---

[1] Diekman sent the email from Cruz's email account, which caused confusion about the true author. The parties argue at length about whether Farmers knew that Diekman wrote the email but nevertheless blamed Cruz. Because this dispute is not relevant to our disposition of the appeal, we need not address it.

4

Brooks and Kautz learned about the email about a month or two later, they "re[]opened the matter to determine if further action was warranted." App. vol. 4, 622.

Based on this reopening, Elsbury informed Sales that Farmers was considering terminating Cruz's contract. According to Sales, Elsbury instructed him to contact Cruz's office to let him know that Farmers was considering terminating the contract and to schedule an appointment between Elsbury and Cruz. The same day, Sales called Cruz's office and spoke to Diekman. Diekman testified that Sales said, "I don't even know how to tell you this. I've been on the phone this morning with [Elsbury], and they want to terminate [Cruz's] contract." App. vol. 2, 246. Diekman asked for more detail and, according to her, Sales responded, "[I]t comes down to[,] they don't want a brown man running around—some crazy brown man running around with a gun."[2] *Id.* at 246–47.

Two days later, Sales asked Elsbury for an update by email, and Elsbury replied that Farmers was "re[]reviewing the situation between [Cruz] and [French]." *Id.* at 273. Sales forwarded this update to Cruz.

Shortly thereafter, Elsbury sent a memorandum to Kautz recommending that Farmers terminate the contract. Elsbury referenced Sales's investigation, citing the French incident and Diekman's email as grounds for termination. According to Elsbury, Cruz breached the contract's requirement that agents "conform to normal good business

---

[2] We observe that Diekman initially testified that Sales told her, "*they* [Farmers] don't want . . . some crazy brown man running around with a gun." App. vol. 2, 247 (emphasis added). In response to a leading question, Diekman later indicated that Sales attributed the comment to Elsbury, stating that "*he* [Elsbury] didn't want a crazy brown man running around with a gun." *Id.* at 248 (emphasis added).

practice." *Id.* at 275 (quoting *id.* at 259). The memorandum also stated that Elsbury had reviewed Cruz's file and there were "other previous happenings" demonstrating a pattern of behavior supporting Elsbury's recommendation. *Id.* Elsbury attached a memorandum from Cruz's file indicating that Cruz had been accused more than seven years earlier of using inappropriate language and threatening a claims adjuster. Kautz forwarded Elsbury's recommendation to Bob Anderson, a high-level manager located in the home office, who responded that the home office approved the termination.

After receiving a termination notice, Cruz appealed the decision through an internal review board, which upheld the termination. Cruz later filed this action alleging that Farmers terminated the contract based on race, in violation of § 1981.[3] Farmers moved for summary judgment, which the district court (a magistrate judge proceeding by consent of the parties) granted. The district court held that Cruz's alleged direct evidence of discrimination—the "brown-man" comment relayed to Diekman by Sales—was inadmissible hearsay. The district court also held that Cruz had otherwise failed, on the basis of circumstantial evidence, to meet his burden to show that Farmers' proffered nondiscriminatory reason for terminating the contract (Cruz's alleged breach for "failing to conform to normal good business practice") was pretext for discrimination. *Id.* at 317.

---

[3] Cruz also filed a state-law claim for breach of the covenant of good faith and fair dealing. The district court granted summary judgment for Farmers on that claim, and Cruz does not appeal that ruling.

Cruz appeals.

## Analysis

We generally review an order granting summary judgment de novo, viewing the evidence and drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018). But when, as here, a party challenges the district court's underlying decision to exclude evidence at the summary-judgment stage, we review that underlying decision for abuse of discretion. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1191 (10th Cir. 2020). "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Trentadue v. F.B.I.*, 572 F.3d 794, 806 (10th Cir. 2009) (quoting *Breaux v. Am. Fam. Mut. Ins. Co.*, 554 F.3d 854, 866 (10th Cir. 2009)). Summary judgment is warranted when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual dispute exists only if, from the evidence presented, a rational jury could find in the nonmoving party's favor. *See Fassbender*, 890 F.3d at 882.

This summary-judgment appeal involves Cruz's § 1981 claim. Section 1981 guarantees that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a). As relevant here, "the term 'make and enforce contracts' includes . . . termination of contracts[] and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship." § 1981(b). To prevail on a § 1981 discrimination claim, a plaintiff must show: (1) membership in a protected class; (2) the defendant intended to discriminate on the basis of race; and (3) the alleged discrimination interfered with a protected activity as defined in the statute (that is, making or enforcing a contract). *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001). Farmers does not dispute the first and third elements, so the second element is the only one at issue.

A plaintiff may prove intentional discrimination under the second element with either direct evidence or circumstantial evidence that satisfies the *McDonnell Douglas* burden-shifting framework. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225–26 (10th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Here, Cruz supports his claim with both types of evidence. The district court granted summary judgment to Farmers under *McDonnell Douglas*. In so doing, it refused to consider Cruz's proffered direct evidence—the "brown-man" comment—because it concluded that the comment was inadmissible hearsay. We begin our analysis there. Because we find that the comment is admissible direct evidence of discrimination and, as such, precludes summary judgment, we do not reach Cruz's circumstantial-evidence arguments.

## I.    Admissibility

Cruz challenges the district court's determination that Sales's comment—"it comes down to[,] they don't want . . . some crazy brown man running around with a

gun"—is inadmissible hearsay.[4] App. vol. 2, 246–47. "Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment." *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (per curiam). As Cruz asserted below and emphasizes on appeal, a statement is not hearsay, however, if the "statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). According to Cruz, Sales was an agent of Farmers for purposes of Rule 801(d)(2)(D), and his comment is therefore admissible as a statement offered against an opposing party.

The district court concluded that the "brown-man" comment did not satisfy the definition of nonhearsay in Rule 801(d)(2)(D). Without addressing Cruz's argument that Sales was an "agent" for purposes of the rule, the district court emphasized that Sales was an independent contractor, not an employee, and determined that the statement was inadmissible because Sales lacked "ultimate" decision-making authority over Cruz. App. vol. 4, 632. In reaching this conclusion, the district court relied on *Jaramillo*, 427 F.3d 1303, and *Johnson v. Weld County*, 594 F.3d 1202 (10th Cir. 2010). On appeal, Cruz reasserts his view that the comment is admissible

---

[4] Farmers correctly observes that Diekman's testimony consists of two separate out-of-court statements: (1) what Elsbury allegedly told Sales; and (2) what Sales allegedly told Diekman. To be admissible, both statements must either qualify as nonhearsay or conform to an exception to the hearsay rule. Fed. R. Evid. 805. But Farmers recognized below that the first statement may be admissible under Federal Rule of Evidence 801(d)(2)(D) and did not separately brief the admissibility of the first statement on appeal. Thus, we address only the second statement.

under Rule 801(d)(2)(D) as a party-opponent admission made by an agent within the scope of the agency relationship and contends that *Jaramillo* and *Johnson* are distinguishable. We consider each issue in turn.

### A.    Agency Relationship

Rule 801(d)(2)(D) applies to statements made by a party's "agent or employee." Farmers asserts that Sales is not a Farmers employee but is instead classified as an independent contractor whose relationship with Farmers is defined contractually. According to Farmers, Sales's statement is inadmissible because "[s]tatements of independent contractors typically do not come within Rule 801(d)(2)(D)." Aplee. Br. 48. But, as Cruz argues, although an independent contractor may not be an employee, he or she may nevertheless be an agent.[5] *See* Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006), cmt. c (explaining that "the common term 'independent contractor' is equivocal in meaning and confusing in usage because some termed independent contractors are agents"); *id.* § 1.01 cmt. g ("The common law of agency encompasses employment as well as nonemployment relations."); *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1252, 1256 (10th Cir. 2020) (emphasizing that "[w]hat is very important, but often overlooked, is that not every agent is an employee" and that "an

---

[5] The district court did not address this argument. Instead, it simply noted Sales's status as an independent contractor rather than an employee without considering the parties' dispute about whether Sales may nevertheless qualify as an "agent" under Rule 801(d)(2)(D). We nevertheless consider this argument on appeal because Cruz preserved the argument below and it forms a critical aspect of his appeal. *See Attocknie v. Smith*, 798 F.3d 1252, 1259 (10th Cir. 2015) ("If the district court failed to address an issue, we can still reverse on that ground if the issue was preserved and is meritorious.").

independent contractor may be an agent even if it is not an employee"). We have also said in other contexts that "an independent contractor can be an agent," and an agent "need not be an employee." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) (collecting cases); *cf. also Bradbury v. Phillips Petrol. Co.*, 815 F.2d 1356, 1360 (10th Cir. 1987) (noting that "agent" and "independent contractor" are not mutually exclusive terms; finding sufficient evidence from which jury could conclude that entity designated by contract as "independent contractor" was agent). Thus, even if we accept Farmers' assertion that Sales is an independent contractor, we must nevertheless address whether Sales acted as an agent during the relevant time period.

Federal law governs whether a declarant acted as an agent for purposes of Rule 801(d)(2)(D). *Boren v. Sable*, 887 F.2d 1032, 1038 (10th Cir. 1989). The Federal Rules of Evidence do not define "agent," and thus we turn to the common-law definition. *See id.* Like other circuits, we utilize the common-law definition from the Restatement (Third) of Agency. *See id.* (looking to then-current Restatement (Second) of Agency (Am. L. Inst. 1958) to define "agency"); *Alfaro-Huitron*, 982 F.3d at 1250–51 (looking primarily to Restatement (Third) of Agency to define "agency" under New Mexico law); *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939 n.3 (9th Cir. 2017) ("The federal common law of agency has frequently been derived from the Restatement of Agency."). According to the Restatement, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01. "A person

11

manifests assent or intention through written or spoken words or other conduct." *Id.*
§ 1.03. How the parties label their relationship in a contract is not dispositive of whether
an agency relationship exists. *Id.* § 1.02; *cf. also Bradbury*, 815 F.2d at 1360.

With these principles in mind, we turn to the evidence presented in this case. The
evidence shows that Brooks and Elsbury directed Sales's work with respect to the French
investigation and the later reopening of the investigation. *See* Restatement (Third) of
Agency § 1.01. Specifically, Brooks acknowledged in his deposition that he told Sales
and Elsbury to investigate the French incident. When Sales emailed Cruz to discuss the
matter, he said that he would need to report back to the territory office, which is evidence
that Sales was acting on behalf of the territory office and not on his own accord. And
after Sales gathered information, he reported his findings to his superiors. Even more
importantly, Sales made the alleged "brown-man" comment during a phone call with
Diekman that, according to Sales, Elsbury directed Sales to make for the purpose of
informing Cruz's office that Farmers was considering terminating Cruz's contract. Thus,
when Sales made the comment on the phone call, he was acting at Elsbury's direction.
Viewed in the light most favorable to Cruz, this evidence shows that Sales was acting as
Farmers' agent during the initial French investigation and the later reopening of that
investigation, both of which collectively inform the nature of Sales's agency relationship
with Farmers. *See Alfaro-Huitron*, 982 F.3d at 1253 ("If the principal requests another to
act on the principal's behalf, indicating that the action should be taken without further

communication and the other consents so to act, an agency relationship exists." (quoting

Restatement (Third) of Agency § 1.01 cmt. c.)).

### B.    Scope

To be admissible, Sales's statement must also be "made on a matter within the

scope of [the agency] relationship." Fed. R. Evid. 801(d)(2)(D). As explained above,

when Sales made the statement at issue, the evidence shows he was acting at

Elsbury's direction. While Elsbury may not have specifically dictated Sales's

comments to Diekman, the rule does not require that the principal authorize the

specific statement made by the agent. Indeed, the Advisory Committee Notes to Rule

801 caution that limiting its scope in this manner would result in the loss of "valuable

and helpful evidence" because "few principals employ agents for the purpose of

making damaging statements." Fed. R. Evid. 801(d)(2)(D) advisory committee's note

to 1972 amendment. Thus, the rule simply requires a statement made on a matter

within the scope of the agency relationship. *See id.*; Fed. R. Evid. 801(d)(2)(D). And

this requirement is met when the declarant makes the statement while performing his

or her agency duties, even if the declarant may have lacked authorization to make the

specific statement at issue, so long as the statement "relate[s] to" those duties.

*Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1242 (10th Cir.

1990); *see also id.* (affirming admission of shuttle-bus driver's damaging statements

regarding hotel's reservation practices made while transporting guests, over objection

that driver "was not qualified to make statements" on that subject, because statements

"related to" matter within scope of driver's agency); Fed. R. Evid. 801(d)(2)(D)

13

advisory committee's note to 1972 amendment (explaining that "[a] substantial trend favors admitting statements *related to* a matter within the scope of the agency" (emphasis added)). Here, because Sales made the alleged statement while carrying out Elsbury's instruction to inform Cruz that Farmers may terminate his contract, Sales's comment was related to a matter within the scope of his agency.[6]

Yet this conclusion does not end our inquiry. Relying on *Jaramillo* and *Johnson*, the district court also found, and Farmers argues on appeal, that Sales's comment does not meet Rule 801(d)(2)(D)'s scope requirement because Sales "did not have ultimate decision-making authority" to terminate Cruz's contract and was not involved in the recommendation or decision to terminate Cruz's contract. App. vol. 4, 632. As we will explain, however, the district court and Farmers read our precedents too narrowly.

In *Jaramillo*, the plaintiff sued her employer under Title VII for sex

---

[6] In support of its position that statements made by its independent contractors are not admissible under Rule 801(d)(2)(D), Farmers cites *Merrick v. Farmers Insurance Group*, 892 F.2d 1434 (9th Cir. 1990). There, the Ninth Circuit held that statements made by a Farmers insurance agent and district manager "about what had transpired at [a] Christmas party" were inadmissible under Rule 801(d)(2)(D) because the plaintiff did not show that those individuals were "agents" as opposed to "independent contractors" or that their statements "concerned a matter within the scope of their agency." *See* 892 F.2d at 1440. *Merrick* is not only nonbinding but also distinguishable—there, unlike here, no evidence showed that the insurance agent and district manager were involved in the process leading to the adverse employment decision or that their statements about events at a Christmas party were made within the scope of their agency. *See id.* Moreover, the Ninth Circuit has more recently clarified that "a finding that a speaker is an independent contractor does not *preclude* a finding that the speaker is also an agent for some purposes." *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010). *Merrick* thus sheds no light on whether Sales was acting as a Farmers' agent under the facts of this case.

discrimination after she applied for a promotion, but a male employee was chosen instead. 427 F.3d at 1306. In support of her discrimination claim, she testified that several coworkers told her that the male employee told them that he had been promised a promotion. *Id.* at 1313. The plaintiff argued that the male employee's statements were nonhearsay admissions of a party opponent. *Id.* at 1314. But because the male employee "was not involved in the hiring or promotion process," we held that his statements were made outside the scope of his employment and thus were inadmissible under Rule 801(d)(2)(D). *Id.*

In *Johnson*, the plaintiff sued her employer under Title VII, alleging discrimination based on sex and disability when she applied to replace her direct supervisor (who had resigned), but a male candidate was chosen instead. 594 F.3d at 1207. In support of her discrimination claim, the plaintiff alleged that the male candidate told her that the hiring manager told him that the hiring manager did not hire the plaintiff because of her gender and disability. *Id.* at 1208. The plaintiff argued that the male candidate's statement was admissible under Rule 801(d)(2)(D) because he was a party opponent. *Id.* We disagreed, reasoning that the male candidate's statements were not attributable to the employer as a party-opponent admission because the male candidate was merely another candidate for the position, was not yet an employee, and was not "remotely" involved in the hiring process. *Id.* at 1208–09. Thus, as in *Jaramillo*, we held that Rule 801(d)(2)(D)'s scope requirement was not met. *Id.*

As this examination of *Jaramillo* and *Johnson* illustrates, these cases are

factually dissimilar from this case and thus do not prohibit the admissibility of

Sales's comment. Contrary to the district court's view, neither case imposes a

requirement that the declarant (here, Sales) be the "ultimate" decision-maker. App.

vol. 4, 632. Instead, both cases merely stand for the proposition that, to come within

Rule 801(d)(2)(D)'s scope requirement in employment-discrimination cases, the

declarant must be "'*involved in* the decision[-]making process affecting the

employment action' at issue."[7] *Johnson*, 594 F.3d at 1209 (emphasis added) (quoting

*Jaramillo*, 427 F.3d at 1314).

And, unlike the declarants in *Jaramillo* and *Johnson*—who were wholly

uninvolved in the employment action at issue—Sales did participate in the process

leading to the termination decision. The evidence shows that Sales was the principal

investigator into the French dispute and was instructed to "resolve the issue." App.

vol. 2, 181. In response to Brooks's request to investigate, Sales gathered information

from Cruz and Diekman, reported the information up the chain of command, and

---

[7] We note that *Jaramillo* cited only *Aliotta v. National Railroad Passenger Corp.*, 315 F.3d 756 (7th Cir. 2003), in support of its conclusion that the declarant must be involved in the decision-making process, 427 F.3d at 1314. In *Aliotta*, the Seventh Circuit acknowledged that decision-making "*may* be critical" to meet Rule 801(d)(2)(D)'s scope requirement in employment cases in which the admission pertains to an adverse employment decision, but it explained that "no similar requirement exists in other contexts." 315 F.3d at 762 (emphasis added); s*ee also Rainbow Travel Serv.*, 896 F.2d at 1242 (affirming admissibility of statement under Rule 801(d)(2)(D) in breach-of-contract case without considering declarant's involvement in actions at issue). But we need not decide here whether *Jaramillo* and *Johnson* apply outside the employment context because, as we will explain, *Jaramillo* and *Johnson* impose no impediment to the admissibility of Sales's comment under the facts of this case.

acted as a communication channel between upper-level managers and Cruz and Diekman. When Farmers reopened the French investigation and considered terminating Cruz's contract, Sales testified that Elsbury told Sales to deliver the news. After informing Cruz's office regarding the potential termination, Sales asked Elsbury for an update two days later and then sent Elsbury's response to Cruz. And in Elsbury's memorandum recommending Cruz's termination, Elsbury relied on Sales's investigation and copied Sales, further illustrating the importance of Sales's investigation and his key role in the process.  In a similar factual situation, we found that Rule 801(d)(2)(D)'s scope requirement was met. *See Fester v. Farmer Bros. Co.*, 49 F. App'x 785, 797 (10th Cir. 2002) (unpublished) (finding division manager's statement was within scope of his employment because he led investigation that resulted in employee's discharge and notified employee of termination).[8]

Several of our sibling circuits have similarly recognized that a statement may be admissible under Rule 801(d)(2)(D), regardless of whether the declarant was a decision-maker, so long as the declarant was involved in the process leading to the challenged decision. *See, e.g.*, *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 999 (9th Cir. 2019) (noting that "a matter may fall within the scope of a declarant's employment even though the declarant did not have final decision-making authority"; collecting cases from other circuits "similarly focus[ing] the scope inquiry on whether the declarant was involved in a process leading up to a challenged decision,

---

[8] We cite this unpublished case only for its persuasive value. *See* 10th Cir. R. 32.1(A).

rather than focusing on whether the declarant was a final decision-maker"); *Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007) (holding that declarant's statement was admissible because even though she "was not involved *in the employment action*, she "was involved *in the process* that led up to that action" (emphases added)); *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1208 n.16 (11th Cir. 2013) (recognizing that "a statement made by a non[]decision[-]maker may be both relevant and attributable to the defendant employer if the non[]decision[-]maker was sufficiently involved in the decision[-]making process leading up to the adverse employment action"); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 79 (2d Cir. 2016) (explaining that declarant need only be "an advisor or other significant participant" in decision-making process for declarant's statement to be admissible (quoting *United States v. Rioux*, 97 F.3d 648, 661 (2d Cir. 1996))).

We are persuaded that Sales's involvement in the process leading to Farmers' termination decision—particularly his initial investigation and later role in notifying Cruz's office that Farmers was considering termination—was sufficient to bring his statement squarely within Rule 801(d)(2)(D)'s scope. Thus, the district court abused its discretion in refusing to admit the statement under Rule 801(d)(2)(D).[9] *See*

---

[9] In response to questioning during oral argument, Farmers' counsel asserted that Sales was not involved in the decision-making process because his investigation pertained only to the French complaint, not Diekman's email. We need not consider this argument because it was raised for the first time at oral argument. *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1292 n.10 (10th Cir. 2017) (explaining that arguments first raised during oral argument are waived). Nevertheless, we reject this theory. To the extent Farmers attempts to argue that there were two separate investigations—one about the French complaint and another about the email—Farmers argued otherwise

*Trentadue*, 572 F.3d at 806.

## II.     Direct Evidence

Having determined that the "brown-man" comment is admissible, we turn to

Cruz's contention that it constitutes direct evidence of Farmers' discriminatory

intent. The district court did not address whether Sales's comment, if admissible,

qualifies as direct evidence. Neither did Farmers. For the first time at oral argument

on appeal, Farmers contended that the comment requires an inference of

discriminatory intent and thus does not constitute direct evidence. Because Farmers

raised this argument—which we construe as an alternative ground for affirmance—

for the first time at oral argument, we are not obligated to consider it. *Elkins v.*

*Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) (noting that whether argument "was

fully briefed and argued here and below" informs our discretion to consider

---

both below and in its appellate briefing. Specifically, Farmers stated below that it
"*re*[]*opened* the matter to determine if further action was warranted regarding [Cruz's
contract]." App. vol. 1, 95 (emphasis added). And in its appellate briefing, Farmers
again repeatedly characterized the latter portion of the investigation as a
"*re*[]open[ing]" or a "*re*[]review[]," and it advanced no argument about separate
investigations. Aplee Br. 11, 39. Moreover, the record evidence supports Farmers'
framing of a single investigation that initially concluded but was later reopened:
Elsbury explained in an email to Sales that Farmers was "*re*[]*reviewing the situation*
*between* [*Cruz*] *and* [*French*]." App. vol. 2, 273 (emphasis added). For that reason,
Sales's role in investigating the situation between Cruz and French was sufficiently
related to Farmers' ultimate termination decision such that Sales was involved in the
decision-making process affecting the termination of Cruz's contract. *See Johnson*,
594 F.3d at 1209. And even if we accepted Farmers' argument that there were two
investigations, we would find that Sales was sufficiently involved in the second
investigation given his role in notifying Cruz's office about the potential termination
and his later role updating Cruz on the status of Farmers' termination decision as
communicated to Sales by Elsbury's email.

19

alternative ground for affirmance). But in any event, we reject this late-blooming argument.

Recall that a plaintiff may prove intentional discrimination with direct evidence. *Kendrick*, 220 F.3d at 1225. "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1154 (10th Cir. 2008) (quoting *Hall v. U.S. Dep't of Lab.*, 476 F.3d 847, 854 (10th Cir. 2007)). "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Vaughn*, 537 F.3d at 1154–55 (quoting *Hall*, 476 F.3d at 855).

For two reasons, we agree with Cruz that Sales's comment reflects direct evidence of discriminatory intent. First, the substance of the comment illustrates a discriminatory motive. According to Diekman, Sales stated that the reason Farmers was considering terminating Cruz's contract "c[a]me[] down to" the fact that "they don't want . . . some crazy brown man running around with a gun." App. vol. 2, 246–47. This statement, if made, indicates that Farmers terminated the contract "because of" an impermissible factor. *See Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1104 (10th Cir. 2008) (explaining that direct evidence demonstrates that decision was made "because of" impermissible factor). Indeed, although Elsbury denied making the comment, he nevertheless acknowledged in his deposition that the comment is "racist" and "discriminatory." App. vol. 3, 403.

Second, the context and timing of Sales's statement is closely linked with the

20

adverse decision. *Cf. Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) ("[D]iscriminatory statements do not qualify as direct evidence if the context or timing of the statements is not closely linked to the adverse decision."). As Sales explained in his deposition, immediately before Sales called Diekman and made the alleged comment, Elsbury told him to call and inform Cruz's agency that Farmers was considering terminating the contract. Upon receiving this unwelcome news, Diekman pressed Sales for an explanation, and Sales made the comment in response—thus, there is a nexus between the discriminatory comment (the cause) and Farmers' termination decision (the effect). There is also a close link between the timing of the statement and the termination decision—Elsbury sent his memorandum recommending termination just four days after Sales made the alleged comment.

To be sure, Sales and Elsbury denied making the comment, and Elsbury also denied instructing Sales to inform Cruz that Farmers wanted to terminate Cruz's contract. But their denials do not change the outcome because, at this stage, it is not our role to "assess the credibility of . . . conflicting testimony." *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1557 (10th Cir. 1995). Rather, we must view the facts in the light most favorable to Cruz, assume his admissible evidence is true, and resolve all doubts against Farmers. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Fassbender*, 890 F.3d at 882.

Viewed in such a light, we conclude that this statement constitutes direct evidence of racial discrimination, thereby raising a genuine issue of material fact as to whether Farmers terminated the contract based on Cruz's race. Because we resolve

21

the appeal on that basis, we need not address Cruz's argument that he can also establish discrimination via circumstantial evidence under the *McDonnell Douglas* framework.[10] *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his [or her] day in court despite the unavailability of direct evidence.'" (second alteration in original) (citation omitted) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir. 1979))); *Fischer v. Forestwood Co.*, 525 F.3d 972, 986–87 (10th Cir. 2008) (declining to resolve whether plaintiff survived summary judgment under *McDonnell Douglas* burden-shifting framework based on circumstantial evidence because plaintiff survived summary judgment based on direct evidence); *Hankins*, 189 F.3d at 364–65, 369 n.9 (declining to address district court's circumstantial-evidence ruling under *McDonnell Douglas* framework because district court had erroneously rejected plaintiff's proffered direct evidence). Thus, we conclude the district court improperly granted summary judgment for Farmers on Cruz's § 1981 claim.

---

[10] Although we resolve this appeal based on direct evidence, Cruz is not precluded from also relying on circumstantial evidence at trial. *Hankins v. City of Phila.*, 189 F.3d 353, 369 n.9 (3rd Cir. 1999), *aff'd en banc*, 216 F.3d 1076 (3rd Cir. 2000) ("Because we conclude that . . . plaintiff is entitled to a jury trial, we need not address his alternative argument that he survive[s] summary judgment under the *McDonnell Douglas* pretext formula. Of course, this does not preclude plaintiff from pursuing a pretext theory at trial.").

**Conclusion**

Based on the record before us, we hold that Sales's "brown-man" comment is admissible under Rule 801(d)(2)(D) and constitutes direct evidence of racial discrimination that a rational jury could rely on to find in Cruz's favor. Thus, we reverse the district court's order granting summary judgment on Cruz's § 1981 claim and remand for further proceedings consistent with this opinion.